(January 31, 1894.)

## SABIN ET AL. v. BURKE ET AL.

[37 Pac. 352.]

ERRORS COURT WILL NOT NOTICE.—On appeal this court can only notice error committed against the appellant, not those committed against the successful party.

DECISION OF TRIAL COURT ON FACTS TAKES THE PLACE OF VERDICT OF JURY.—In causes heard by the court below without a jury the decision of the court on questions of fact takes the place of the verdict of the jury in jury trials, and will not be disturbed where there is a substantial conflict in the testimony, unless the decision is clearly against the weight of the testimony.

NOTE PAYABLE IN BANK—CAN BE SUED AFTER BANKING HOURS.— A note without grace, made payable in a bank, placed and remaining therein for collection until due, may be sued upon after banking hours on the evening of the day it falls due, where the opening and closing hours are well known to the maker.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

James W. Reid and D. C. Mitchell, for Appellants (Cox, Teal & Minor, of Counsel).

It is admitted that the plaintiffs, Murphy, Grant & Co., Sabin (Dawson) and Ford, had valid subsisting attachments on the property of Barnett, which Burke was attempting to subject to the payment of his judgments before his claims on which he afterward recovered judgments had ripened into judgment, and we contend that the law is well settled that as such attaching creditors with liens on the property, they could maintain a bill in equity to enjoin the subjection of this property to any

fraudulent claims, and prevent fraudulent conveyances. This rule is now settled in New Jersey (*Curry v. Glass,* 25 N. J. Eq. 108; *Davis v. Dean,* 26 N. J. Eq. 436; *Conover v. Ruckman,* 32 N. J. Eq. 685); New Hampshire (*Stone v. Anderson,* 26 N. H. 506; *Tappan v. Evans,* 11 N. H. 311; *Sheafe v. Sheafe,* 40 N. H. 516; *Peck v. Jenness,* 7 How. (U. S.) 612; *Case v. Beauregard,* 101 U. S. 691; *Talley v. Curtain,* 54 Fed. 43); Michigan (*Hale v. Chandler,* 3 Mich. 531; *Hinchman v. Towne,* 10 Mich. 508), and Mississippi (*Cogburn v. Pollock,* 54 Miss. 639). The rule of law is well settled that collateral securities follow the renewals of the principal indebtedness for the payment of which they have been deposited, whatever may be the form which such indebtedness may assume. (Colebrook on Collateral Securities, sec. 14; *Brinkerhoff v. Lansing,* 4 Johns. Ch. 65, 8 Am. Dec. 538; *Davis v. Maynard,* 9 Mass. 242; *Cover v. Black,* 1 Pa. St. 493; *Dayton Nat. Bank v. Merchants' Nat. Bank,* 37 Ohio St. 208; *Worcester Nat. Bank v. Cheney,* 87 Ill. 702.) And the rule of law is equally well established that the giving of a note for an existing indebtedness in the absence of any agreement that the same is taken in payment does not extinguish such indebtedness. (Edwards on Bills and Notes, secs. 284, 288; Daniel on Negotiable Instruments, sec. 1260 et seq.; Randolph on Negotiable Instruments, secs. 1509, 1548, 1560.) The rule is that for the purpose of fixing the liabilities of an indorser, the note is payable on demand at any time during reasonable hours on the last day of grace; but for the purpose of sustaining an action, the holder must wait until the following day, as the maker has the whole day to make payment. (*Hopping v. Quinn,* 12 Wend. 517; *Outhout v. Ballard,* 41 Barb. 33; *Smith v. Aylesworth,* 40 Barb. 104; *Bell v. Sackett,* 38 Cal. 407; *People v. Hatch,* 33 Ill. 138; *White v. Jones,* 38 Ill. 159-163; *Reese v. Mitchell,* 41 Ill. 368; *Watkins v. Willis,* 58 Tex. 521; *Sanders v. Ochiltree,* 5 Port. (Ala.) 73, 30 Am. Dec. 551; Tiedeman on Commercial Paper, sec. 317; 2 Daniel on Negotiable Instruments, last ed., secs. 1208, 1212.)

Philip Tillinghast, for Respondent.

It is shown in the original complaint that the plaintiffs were simple contract creditors, and had not obtained judgment upon

their several claims, nor had executions returned *nulla bona;* therefore have no standing in a court of equity to maintain a creditor's bill. The appellants seemingly attempt to hold that because, after the commencement of the action and prior to the filing of the supplemental bill, the plaintiffs obtained judgment upon their several causes of action against H. K. Barnett and issued executions which were returned *nulla bona,* that this gives them a standing in a court of equity, and that the interveners, because they did not attempt to intervene until after they had obtained judgment, and the return of *nulla bona,* are also entitled to a standing in this court. Plaintiff, not having a cause of "action at the date of the commencement of the action, cannot maintain a suit upon a cause of action subsequently acquired against the defendant. (*Wittenbrock v. Bellmer,* 57 Cal. 13; *Bohn Mfg. Co. v. Jameson,* 39 Minn. 438, 40 N. W. 513; *Lowry v. Harris,* 12 Minn. 166; *Morgan v. Menzies,* 65 Cal. 244, 3 Pac. 807; *Chandler v. Petit,* 1 Paige Ch. 168.) In the decision rendered by Mr. Justice Brewer, now of the supreme court of the United States, one of the ablest judges upon that bench, when on the supreme bench of Kansas (*Tennent v. Battey,* 18 Kan. 326), after very carefully considering and reviewing all of the authorities, and upon a statute very similar to that of Idaho, the learned judge in rendering the decision of the court says: "The only right the plaintiffs have under the attachment is to use such measures as may be necessary to preserve this security until they can reduce their claim to judgment. They have no right to harass other parties with litigation that may prove fruitless, in trying to remove obstructions to the sale of the property, until they have first obtained the right to have a sale of the property made. When that right has been definitely settled, their lien having been preserved in tact, they can then commence actions to remove obstructions in the way of their execution. But until this is done, they have no right to interfere with the claims of third parties. There can be no reason or necessity for such a proceeding. (*Martin v. Michael,* 23 Mo. 50, 66 Am. Dec. 656; *Weil v. Lamkins,* 3 Neb. 38; *Bigelow v. Anderson,* 31 Ill. 322; *Shufeldt v. Baehm,* 96 Ill. 265; *Thurber v. Blank,* 50 N. Y. 8.) The lower court, in its findings of fact, found that all of the charges of fraud,

collusion and conspiracy between the defendants Burke and Barnett were false. (*Chamberlain v. Woodin,* 2 Idaho, 642, 23 Pac. 179.) In *British-American Assur. Co. v. Neil,* 76 Iowa, 645, 41 N. W. 382, the court holds that "the findings have the effect of a verdict, and will not be set aside unless they are so against the proof as to raise a presumption of passion or prejudice." (*Reay v. Butler,* 95 Cal. 206, 30 Pac. 209; *Patterson v. Scott,* 142 Ill. 138, 31 N. E. 433; *Coari v. Oleson,* 91 Ill. 280; *Cox v. Northwestern Stage Co.,* 1 Idaho, 377.) A note payable at a bank after dishonor can be sued immediately after banking hours on the day it was due. (*Staples v. Franklin Bank,* 1 Met. 43, 35 Am. Dec. 354; *State Bank v. Napier,* 6 Humph. 270, 44 Am. Dec. 310; *Greeley v. Thurston,* 4 Greenl. 479, 16 Am. Dec. 285; *Shed v. Brett,* 1 Pick. 401, 11 Am. Dec. 209.) This note was payable at a bank, and if so payable no demand is necessary. (*United States v. Carmichael,* 2 Pet. 249; *Gillett v. Averill,* 5 Denio, 85; 2 Daniel on Negotiable Instruments, sec. 1210; *Church v. Clark,* 21 Pick. 310.)

R. L. Sabin and others allege that they were creditors in the sum of about $25,000, Murphy, Grant & Co. for the sum of $5,962.07, W. and I. Steinhart & Co. in the sum of $1,367.86, W. C. Noon & Co. in the sum of $3,091.14, together with various other amounts for attorneys' fees, costs, etc., on nearly all of which indebtedness attachments were issued at various dates during the month of September, 1889. Plaintiff further alleges that on each of the above judgments execution had been issued to the sheriffs of the respective counties, and has been returned *nulla bona;* that H. K. Barnett did on the second day of September, 1889, make his promissory note to John Burke for the sum of $24,350, due one day after date; that said Burke commenced suit thereon after 4 o'clock on the third day of September, 1889, but did not issue or serve summons or attachment thereon until the twenty-third day of September, 1889; that on September 24th said Burke caused an attachment to be levied upon all the goods and chattels of the said Barnett, in Latah and Nez-Perces counties; that on the twenty-first day of September, 1889, the said H. K. Barnett executed his certain other promissory note to John Burke for the sum of $7,300; that an attachment was issued September 23d on the latter note and

levied on the goods and chattels of the said H. K. Barnett, on the twenty-fourth day of September, 1889.

Plaintiffs further allege that both said notes were executed in furtherance of an agreement made and entered into by and between the said H. K. Barnett and the said John Burke, for the purpose of aiding, abetting and assisting the said H. K. Barnett to delay, hinder and defraud his creditors, and particularly the plaintiffs and their assignors; that the said notes were for sums largely in excess of the amounts due the said John Burke from the said H. K. Barnett; that they were without adequate or any consideration; also that said suits were commenced and attachments levied upon all the goods and chattels of the said Barnett for the said purpose of hindering, delaying, and defrauding his creditors.

Plaintiffs further allege that at the time said attachments were issued, the said John Burke had in his possession a large amount of promissory notes belonging to the said H. K. Barnett, which were indorsed and transferred to said Burke as collateral security for the payment of said first-mentioned notes, which said notes were also attached by virtue of the attachment of the said John Burke; that the said Burke and the said Barnett were the owners of a large quantity of wheat of the value of $100,000; that the interest of the said Barnett in said wheat was held by the said Burke as a pledge or security on whatever sum should become due on the said notes. The plaintiffs further allege that during the month of September, 1889, and for a long period prior thereto, the said H. K. Barnett was insolvent; that said fact was known to both the said Burke and the said Barnett; that the execution of the said notes to the said John Burke and the judgment thereon, and of execution thereon, was and is fraudulent and void as against these plaintiffs and their assignors, and pray that they may be so declared by the court; that the property taken under the attachment of the said John Burke constituted all the property of the said Barnett so far as the plaintiffs have been able to ascertain, and may be properly described as follows: One lot and store building and warehouse thereon in the town of Genesee, Idaho; a stock of general merchandise in the town of Genesee; an undivided one-half interest in a warehouse in Lewiston, owned by White and Barnett; a stock of general merchan-

dise in the town of Lewiston, Idaho, sundry sums in notes from
parties in or near Lewiston, Idaho; sums of money due upon
account against other persons living in or near Lewiston and
Genesee, Idaho. That the said Burke caused all of the said
property to be attached and seized for apparent claims amount-
ing to $32,608.17. Said plaintiffs pray that the lien of the
said Burke upon said property and money be declared void and
the same be applied in payment on the indebtedness due to the
said plaintiffs.

An order was made by the court upon the commencement of
the suit of the said plaintiffs appointing P. M. Davis receiver,
and a writ of injunction enjoining the further disposal of the
goods by the said sheriffs and restraining and preventing the
payment of any of the moneys arising therefrom to the said
John Burke. Demurrers were filed by the said John Burke and
H. K. Barnett, which demurrers were overruled by the court
on the twentieth day of November, 1891. Thereupon the said
John Burke filed his answer to the said amended complaint, de-
nying all of the allegations thereof and alleging that the amount
specified in said notes was due and owing from the said Barnett
to the said Burke. Denies all design to hinder, delay and de-
fraud creditors. Said Burke further alleges that all of the sev-
eral steps from the inception of the said actions down to the
levy of the said writs of execution were taken and done by this
defendant without the knowledge of the said H. K. Barnett,
and for the sole purpose of protecting himself in the collection
of his just debts, and that on the proper sale of said property
there can be realized the sum of $45,000. H. K. Barnett files
his separate answer denying, on information and belief, indebt-
edness to any of the said plaintiffs. Denies the intention to de-
fraud, delay and hinder his creditors. Admits the giving of
the notes to the said Burke; that the same was justly and fully
due to him, the said Burke, for moneys before that time had
and received from said Burke and used by the said Barnett in
his business of merchandising. Said H. K. Barnett further
denies any conspiracy between himself and Burke, and any in-
clination on his part to hinder, delay or defraud his creditors,
and denies specifically, and at length, all the other allegations
of the said amended and supplemental complaint.

The supplemental complaint alleges as facts arising since the commencement of the several suits as follows: Stoppage of goods *in transitu* and allowance of proper creditors therefor, prosecution of the several suits to judgment, issuance of executions upon some of the judgments, return of the same *nulla bona* by the sheriff, all of which facts, with various others set forth, occurred after the filing of the original complaint and since the commencement of the suits, and all of which were proper matters for the consideration of the court.

To the amended and supplemental complaint the defendants, John Burke and H. K. Barnett, filed demurrers, as before stated, upon the ground of misjoinder of parties; that said complaint does not state facts sufficient to constitute a cause of action, and that plaintiffs had not legal capacity to sue. These demurrers were overruled by the court, to which exception was taken by the defendants. We think the amended and supplemental complaint sufficiently states a cause of action.

As to misjoinder of parties: Each one by the statement of facts as set forth would be entitled to bring a separate creditor's bill for the purposes in his complaint set forth. If such course had been pursued the causes set forth would have been properly consolidated by order of the court, not only to prevent unnecessary accumulation of costs, but all substantially resting upon the same facts could have been tried better together than separately.

The district court, after hearing the testimony, found as facts, among others, the following:

"Finding No. 14. The court further finds that all the transactions between H. K. Barnett and John Burke prior to the commencement of this action, and up to the time of the entry and docketing of judgments, and up to this time, by John Burke against H. K. Barnett, and at all times were without fraud, collusion and all of the said transactions were made in good faith, and that the said H. K. Barnett was justly and truly indebted to the said John Burke, and is now, in the sum of $32,608.17, upon the two several causes of action in the said two several suits of John Burke against Barnett, heretofore mentioned herein; that all of the entries upon the books and all of the transactions between the said Burke and Barnett are wholly free from fraud, collusion or corrupt methods or means,

and that the suits brought by John Burke against the said Barnett and the obtaining of the judgments and the levy of the attachments, and the issue and levy of executions were wholly and entirely without fraud or collusion.

"Finding No. 15. That the plaintiffs, all and each of them being simple contract creditors at the time of the commencement of this action, of said H. K. Barnett, and there being no fraud or collusion between John Burke and the said H. K. Barnett, the plaintiffs cannot attack the several judgments obtained by the said John Burke against the said H. K. Barnett in these proceedings.

"The evidence shows that there was a good, adequate, valuable, full and perfect consideration for the note of $24,350, and also for the note of $7,300, executed and delivered by H. K. Barnett to John Burke, and the court so finds.

"As conclusions of law the court finds and decrees, that the injunction in said cause be dissolved, that John Burke retain out of the moneys in his hands the sum of $32,710.47 in satisfaction of his two several judgments against the said H. K. Barnett"; that the said executions of John Burke be declared prior liens on the property of H. K. Barnett; that the attachments, judgments and executions of the plaintiffs in this action, and the whole thereof, be postponed and held subsequent to the judgments, attachments and executions of John Burke; that the securities of John Burke be exonerated from all liability, etc."

Decree was entered accordingly. Motion for new trial was made by plaintiffs, which motion was overruled by the court, and an appeal taken to this court by R. L. Sabin, W. and I. Steinhart & Co, Joseph A. Ford and W. C. Noon & Co., plaintiffs herein, from the judgment and from the order overruling the motion for new trial.

J. W. Reid, D. C. Mitchell and Cox, Teal & Minor, Attorneys for Appellants.

P. Tillinghast, for Respondents.

MORGAN, J.—The following, substantially, are the errors assigned by the attorneys for the appellant in the findings of fact placed on file by the court, to wit:

"They allege as error the finding that on the second day of September, 1889, the defendant, H. K. Barnett, was indebted to the defendant, John Burke, in the sum of $24,350; that at that time the said John Burke was engaged in general banking business at Lewiston; that said indebtedness was then past due and that it was payable at the bank of Lewiston in Lewiston, Idaho, during banking hours of the third day of September, 1889; that demand was made for the payment of said note after the close of banking hours on the third day of September, 1889. The finding that the papers for the commencement of the suit on this note were placed on file in the clerk's office on the third day of September, 1889, and that no concealment whatever was practiced with regard thereto; that the defendant H. K. Barnett was further indebted to the said Burke in the sum of $7,300, for which sum he gave the defendant, John Burke, his promissory note on the twenty-first day of September, 1889; that all of said proceedings from the taking of said notes, and including the issue and levy of said attachment, procuring of judgment and issuance and levy of execution, were taken, done and had by the said John Burke without any fraud or collusion on the part of said Burke, or on the part of the said H. K. Barnett, or at all. The plaintiff further alleges as error the finding of fact that the attachment of the said I. R. Dawson, R. L. Sabin, Murphy, Grant & Co., W. and I. Steinhart & Co., Joseph A. Ford, W. C. Noon & Co., had no lien claim upon the property of the said H. K. Barnett by judgment or execution, except by the levy of the said writs of attachment and writs of execution issued upon the claims of the said plaintiffs, which said levy and lien were all subject and subordinate to the levy and lien of the said John Burke. The finding of fact that there was no understanding, fraudulent or otherwise, between Burke and Barnett in making and delivering said notes or in the commencement of the action by John Burke against Barnett, or in levying the attachment, taking the judgments or any of the proceedings therein."

The principal questions arising in this case may all be reduced to three: 1. Did the plaintiffs, by reason of commencing suits, issuing attachments and levying upon the same stock of goods and other property of H. K. Barnett as was levied upon

by defendant Burke, place themselves in a position where they could properly bring a creditor's bill to test the good faith of Burke and Barnett and the validity of the proceedings in procuring a lien upon the property? 2. Was there sufficient evidence of fraud in the transactions of Burke and Barnett to justify the court in dismissing the suits of Burke, or in postponing his lien upon the property and making it subsequent to those of the plaintiffs? 3. Were the suits of *Burke v. Barnett,* or either of them, prematurely brought?

The court, having overruled the demurrers to the amended and supplemental complaint, necessarily decided that the plaintiffs had legal capacity to bring said creditor's bill, as one of the causes of demurrer was that the said complaint did not state facts sufficient to constitute a cause of action. If the plaintiffs had not legal capacity to sue it would be impossible for them to state facts which would constitute a cause of action. Another of the causes of demurrer set forth by both of the defendants was that the plaintiffs, R. L. Sabin, Thomas F. Osborn, H. Bryant, Sarah A. Neville, A. M. Osborne and W. C. Noon have no legal right to sue.

The court having overruled the demurrer, again necessarily held that said plaintiffs had legal capacity to sue. Again, the defendant Barnett moved the court to strike from the files the said amended and supplemental complaint. This motion was overruled and denied by the court. This motion would seem to again involve the question of the plaintiffs' right to bring this action and, having been determined in favor of the plaintiffs, the court again judicially determined in favor of the plaintiffs' legal capacity to sue. It is true that the court recites in the fourteenth finding of fact that the plaintiffs cannot attack the several judgments obtained by the said John Burke against the said H. K. Barnett in the proceedings. The question as to whether the plaintiffs could attack the judgments of *Burke v. Barnett* in these proceedings is a question of law, and not one of fact, and a question of law which had already been decided by the court in the affirmative as above stated. The court not only so decided, but permitted such attack to be made, and took a very large amount of testimony, as the transcript of several hundred pages shows, and decided in the end that

the evidence heard therein was not sufficient to make such attack successful.

The conclusions of law filed by the court do not include any determination that the plaintiffs have no legal capacity to bring this action, nor does the judgment of the court so determine.

The court dismisses the complaint, it is true, but this judgment would necessarily follow the decision of the court that there was no fraud in the giving of the promissory notes to John Burke, that none of the proceedings of either Burke or Barnett were fraudulent, or were intended to hinder, delay or defraud the creditors of the said H. K. Barnett. The judgment of the court is that said defendant Burke is entitled to the full amount of his judgments out of the first moneys coming into the hands of the receiver, and that the liens of such plaintiffs as have liens are subordinate to, and postponed in favor of, the lien of the said Burke, and that the latter is prior and superior lien to any and all of the liens of the plaintiffs. No appeal having been taken by the defendant, the question determined against him cannot be reviewed by this court. (*Jones v. St. Johns Irr. Co.,* 2 Idaho, 58, 3 Pac. 1.) The question of the legal capacity of the said plaintiffs to bring this action is eliminated by the decision of the court and the judgment thereof. There remains, then, the correctness of the decision of the court as to fraud, and the question of the premature bringing of the suits upon the notes by John Burke.

As to the question of fraud and conspiracy of Burke to hinder, delay and defraud: The first matter that attracts the attention of the court is the question of the insolvency of Barnett. The attorneys for appellant state on page 6 of their brief that Barnett was insolvent, had been for a long time and was all the year 1889, and this fact was well known to both Burke and Barnett, and refer to testimony of Davis (transcript, folios 1186-1237). We have carefully examined said testimony and find no evidence in it stating that Davis knew anything about the solvency or insolvency of Barnett before he was appointed receiver, and absolutely no evidence therein that Burke knew that he was insolvent. Again, on same page counsel state that on September 14th, Barnett, with Burke's knowledge, represented to Newstadter Bros., one of the parties whose claims are

sued on, that he, Barnett, owed no one in Latah or Nez Perces counties except Burke, and owed him not exceeding $15,000, and reference is made to Teal's testimony (transcript, folios 1246, 1260, 1264-1267), and we fail in such testimony to find any statement by Teal that Burke knew anything about the written statement that Barnett had made. Again, on page 7, counsel say, after September 2d, Barnett, with Burke's knowledge, purchased on credit of plaintiffs and assignors, goods amounting to over $5,000, and refer to Barnett's testimony (transcript, folios 1825-1827), and this testimony neither states nor intimates that Burke knew anything about Barnett's purchase at that time. On the contrary, Barnett states (folios 1838-1841) that Burke knew nothing about his order for goods during September, prior to September 24th, and we find no substantial contradiction of this testimony.

As to the consideration for the note given Burke by Barnett on the second day of September, 1889: Burke and Barnett swear positively to the fact that the whole amount was then fully due and owing from Barnett to Burke. W. W. Brown, bookkeeper in Burke's bank, also swears that Barnett was indebted on the second day of September to the full amount of this note for $24,350, and gives the items of this indebtedness. The same may be said of the note for $7,300. Brown testifies specifically what formed the consideration of both of these notes.

There can be no reasonable doubt that the amounts were due Burke, and the court below has so found, and that he was justified by a preponderance of testimony in so finding cannot be doubted. There is scarcely any testimony even tending to show a contrary state of facts. The statement of Barnett of his assets and liabilities made by Barnett himself without the knowledge of Burke, not in his presence, cannot bind Burke, and is not proper evidence against him, and cannot in any way affect his right to recover. This applies to both the statement to Newstadter Bros. and that made to Murphy, Grant & Co.

If, however, this court had any doubt of the validity of this indebtedness, or if the evidence concerning it was conflicting, the court below has found from the evidence that this amount was fully due and owing. The decision of a court when sitting in the trial of a cause is of the same force and effect as the

verdict of a jury in a jury trial, and where there is a substantial conflict in the testimony it is the duty of the appellate court to affirm the decision.

Counsel for plaintiff contend that because Barnett, in his statement to Teal on the 14th of September, 1889, put his indebtedness to Burke at $15,000, that therefore this was evidence, tending to show that he did not owe Burke more than $15,000, at that time. It is probable that Barnett would have admitted to Burke, if questioned upon the subject, that he owed the plaintiffs one-half of what his real indebtedness was to them. The plaintiffs would hardly admit that this would be proper evidence against them, or that it would have any tendency even to prove that the indebtedness to the plaintiff was less than the promissory notes they might have from Barnett indicated. Such evidence could certainly have no effect whatever in reducing the claims of any person.

Counsel also claimed that the fact that Burke commenced suit for the $24,000 on the third day of September, and that the summons and attachment issued thereon were not placed in the hands of the sheriff until the twenty-third or twenty-fourth day of September, that this is evidence indicating that Burke intended this note, the action and attachment thereon, as a secret mortgage, to be held so secretly that no one should know of it, and to be used to secure the payment of Barnett's indebtedness to himself. No one knows better than counsel for the plaintiff that this arrangement of the attorney of Burke did not amount to a secret mortgage nor a lien of any kind. It was evidently done for the purpose of enabling Burke to secure a levy upon the goods of Barnett before a levy could be made by any other attaching creditor, in case Barnett should not succeed in making the collections which he states he expected to make of the $20,000, which was to be paid upon his debts, this note included, within the ensuing thirty days. It indicated on the part of Burke a willingness to give Barnett an opportunity to make these collections, and apply them on his debts, if he could do so. We cannot assume from this that Burke was party to a scheme to give Barnett an opportunity to purchase and secure other goods upon which Burke might make a levy to secure his claim.

It appears from the evidence in this case that Barnett had abundant property upon which Burke could have levied on the fourth day of September, and from which he could have secured the payment of his whole claim, and therefore we may just as well assume that Burke intended, by refraining from issuing and levying his attachment, to give Barnett an opportunity to pay this indebtedness, if he could, otherwise he would have made the levy at once. It is sufficient to say that while Burke, Barnett and Brown all swear positively that there was no fraud or collusion between Burke and Barnett in regard to giving Burke the two notes in question, there is, on the contrary, nothing but circumstantial evidence tending to show fraud, and this is of such a character that it might as well occur in the case of a diligent creditor seeking to put himself in a position where he could get a levy in advance of other creditors in case of a collapse, and we are forced to the conclusion that it falls far short of being sufficient to justify this court in setting aside the judgment of the lower court upon the facts appearing herein.

We come now to the question as to whether suit was prematurely brought upon the notes, or either of them. Section 3483 of the Revised Statutes of Idaho states: "It is not necessary to make a demand of payment upon the principal debtor on a negotiable instrument in order to charge him." This fact renders demand of payment upon the maker of a promissory note at maturity an unnecessary form in this state in order to bring suit against the maker. The note of Barnett to Burke in controversy in this case was given on the third day of September, 1889, and due one day after without grace, and was payable at the office of the said Burke in Lewiston, Idaho territory. The evidence is conclusive that the office of John Burke was the Bank of Lewiston, of which he was the sole owner and manager; that he transacted all his commercial business there; that the business hours of said bank were from 9 o'clock A. M. to 4 o'clock P. M. each day; that the note was deposited there and remained in the bank until after 4 o'clock P. M. of the third day of September, 1889, and after that time the attorney went to the bank, procured a copy of the note, and the papers for the commencement of the suit were made out the

same evening, and after that time. It is clearly the law that where a note is payable at the place of business of the payee, the maker has the whole or all of the business hours of the day it falls due in which to make payment. If it is the custom of the payee to close his office or store or place of business at 6 o'clock in the evening, the maker has until that time to make a tender of payment on the note. If the note is made payable at the bank, and the bank opens at 9 o'clock in the morning and closes at 4 o'clock in the evening, the maker has until that time to make payment on the note; the time of closing being well known to the payee.

It is clear that in the first instance given the maker would have no right to make a tender of payment at the place of business of the payee at 8 or 10 o'clock in the evening, neither would it avail him in the latter case to make tender of payment at half-past 4 o'clock at a bank where it was the custom to close its doors at 4 o'clock. In short, the maker of a note has until the expiration of the office hours of the institution where the note is made payable within which to make payment of any note.

It is in evidence that Barnett did all his business, or nearly all, at the banking hours of defendant Burke, and well knew the hours of opening and closing. No tender of money after that time at the place of business designated would be of any avail. The time given within which he was to make payment has expired.

The question now is whether suit can be brought upon the note after the time limited by the maker of the note himself, in which the payment is to be made, has fully expired, and on the same day of its expiration. All the papers filed at the commencement of the suit on the note for $24,350 in Nez Perces county indicate beyond a reasonable doubt that said suit was commenced on the third day of September, 1889, and the court so found. All the papers placed on file at the commencement of the suit on the note for $7,300 indicate that suit was commenced on this note on the twenty-third day of September, 1889. The attachments in both cases appear to have been levied upon the goods of the defendant Barnett on the twenty-fourth day of September. It appears reasonably certain, also, from

all the testimony and exhibits, that the suit on the note for $24,350 was commenced after 4 o'clock on the third day of September. In some cases dates have been changed in papers, but on examination, of original papers, we find no place where date of filing has been chaged. It is also equally clear that where a note is payable in bank, and it has remained in the bank all of the banking hours of the day specified, suit may be brought on it on the day it falls due, after the close of the bank; and the necessity for demand in order to bring suit on said day is obviated where the note is payable in bank. (*Greeley v. Thurston,* 4 Greenl. 479, 16 Am. Dec. 288; *Shedd v. Brett,* 1 Pick. 401, 11 Am. Dec. 216, and cases there cited, and note; *Bank of United States v. Corneal,* 2 Pet. 543.)

If a note be payable at a particular time and place, it is well settled, independent of commercial usage, that if the holder be at the place during the time stipulated for the payment, and no one called to make payment, the contract is forfeited and a right of action immediately accrues to the payee. (*State Bank v. Napier,* 6 Humph. 270, 44 Am. Dec. 310.) Where a note is made payable at the bank, and the note is in the hands of the cashier for collection, there is no necessity for his making a specific demand. The legal requirements as to presentment and demand are complied with if the note was in bank at the time it fell due in the hands of the cashier ready to receive the money. (*Ogden v. Dobbin,* 2 Hall (N. Y.), 112; *Folger v. Chase,* 18 Pick. 63.) Where the time and place of payment are fixed on the face of the note, if the holder be at the place during the time stipulated for the payment and no one called to make payment, the contract is forfeited, and a right of action immediately accrues to the payee. (*Apperson v. Union Bank,* 4 Cold. 456.)

It is scarcely necessary to multiply authorities on this subject. We are aware that a different doctrine has been held in a number of cases, but we regard the weight of authority and the better doctrine to be as stated herein. Plaintiffs take exception to the ruling of court in excluding testimony of Grierson as to papers getting wet. We have the original papers for examination, and they are perfectly legible, and the testimony was therefore immaterial. Conversations between Maxwell, at-

torney for Burke, and Grierson, the clerk, after suits of *Burke v. Barnett* were brought and prosecuted to judgment, not in the presence of Burke, are not evidence, and were properly excluded.

A large number of exceptions were taken during the trial to the admission and rejection of testimony, but the above comprise substantially all appellants have noticed in their brief, and therefore the court does not deem it necessary to notice those exceptions which appellants do not consider of sufficient importance to notice in their brief.

Judgment of the court below is affirmed; costs awarded to respondent.

Huston, C. J., and Sullivan, J., concur.