[S. F. No. 449. Department Two.—November 2, 1897.]

## MARION A. BULLARD, Appellant, v. LOUIS KEMPFF and CORNELIA KEMPFF, His Wife, Respondents.

BOUNDARY OF LOT—DISPUTE AS TO DIVISION LINE—ACTION TO ENJOIN RE-MOVAL OF BULKHEAD—PRELIMINARY INJUNCTION—IMPROPER DISSOLUTION.
In an action to enjoin the removal of a bulkhead which for four-teen years had practically marked the division of occupation of adjacent lots of plaintiff and defendants, the defendants claiming the right to remove it, as occupying eight inches of defendants' lot, which claim was disputed by the plaintiff, a preliminary injunction should be allowed to stand until the trial, a dissolution of it being improper, as practically equivalent to a dismissal of the action be-fore a trial upon the merits, where it is not made reasonably certain by the pleadings and affidavits that the attack upon plaintiff's title and right of occupation up to the existing bulkhead line would be ultimately successful.

ID.—DISPUTED TITLE—GROUND FOR INJUNCTION PENDENTE LITE—PRESERVA-TION OF PROPERTY.—The mere existence of a doubt as to the title does not of itself constitute sufficient ground for refusing an injunction; and the jurisdiction of the court to issue injunctions where the title is in dispute is asserted for the preservation of the property pending proceedings for the determination of the title of the par-ties.

ID.—IMPROVEMENTS BY FORMER OWNER OF ADJACENT LOTS—SALE OF IMPROVED LOTS—LOCATION OF BOUNDARIES—MONUMENTS CONTROLLING DISTANCES.—
Where a former owner of adjacent lots improved them by the erection of houses, bulkheads, and fences, making each ready for occupancy, and sold them, putting persons in possession of the re-spective lots just as they were inclosed and improved, the boundary lines designated by the improvements, being the monuments fixed by the original survey and measurement of the adjacent lots by the common vendor, control the distances described in the deeds, and fix the actual location of the lines upon the ground.

ID.—DECLARATION OF VENDOR TO DEFENDANT—NONCOMMUNICATION TO PLAIN-TIFF.—A declaration made by the common vendor of the improved lots to one of the defendants at the time of his purchase, that the house which constituted part of the bulkhead was four inches from the east line, and that each of a row of houses erected by the same vendor was built four inches from the east line of the lots, so as to leave room for the overhanging gutterways, such declaration not having been communicated to plaintiff, is inadmissible to change or affect the lines marked by the common vendor upon the ground by the monuments erected thereon.

ID.—ACQUIESCENCE IN OCCUPATION BY MONUMENTS—EFFECT UPON PRELIMIN-ARY INJUNCTION.—The long acquiescence of the defendants in the occu-pation of the adjacent lots according to the monuments erected thereon, aside from any question of its being a new source of right,

whether operating by estoppel or otherwise, should have great weight upon the question whether the preliminary injunction against the removal of the bulkhead line should be continued until the trial of the action permanently to enjoin its removal.

ID.—ADVERSE POSSESSION—TAXES—MONUMENTS CONTROLLING DESCRIPTION IN ASSESSMENT ROLL.—Where the fences constitute monuments which control the description in the deeds of adjacent lots, such monuments must also control the description in the assessment-roll, and the question of adverse possession and payment of taxes need not be considered.

APPEAL from an order of the Superior Court of the City and County of San Francisco dissolving a preliminary injunction. A. A. Sanderson, Judge.

The facts are stated in the opinion.

Dunne & McPike, for Appellants.

Olney & Olney, for Respondent.

HAYNES, C.—Plaintiff brought this action to enjoin the defendants from destroying or removing a bulkhead or retaining wall erected along the westerly side of her lot. Upon filing her complaint, a preliminary injunction was granted. The defendants answered, and upon their answer and affidavits moved for a dissolution of the injunction. The plaintiff filed affidavits in reply, and upon the hearing an order was made dissolving the injunction, and from that order the plaintiff appeals.

Plaintiff and defendant Cornelia respectively own adjacent lots in the city of San Francisco, and this controversy involves the location of the division line between them.

These lots front on the northerly line of Clay street, between Buchanan and Webster streets, and, with other lots contiguous thereto, were formerly owned by one Henry Hinkel, and prior to October 11, 1880, said Hinkel erected thereon a row of detached houses for the purpose of sale.

On the date last mentioned, Hinkel sold and conveyed one of said houses and lots to defendant Louis Kempff, who afterward conveyed to his wife, the defendant Cornelia. On November 9, 1880, Hinkel conveyed to W. P. Bullard, the husband of the plaintiff, the lot adjoining the Kempff lot on the east, and Bullard conveyed to the plaintiff.

The ground from Buchanan street on the east slopes downward to Webster street on the west, and the lots were terraced by Hinkel, who built each house on the east side of the lot, and built bulkheads, from the front thereof to the street, and from the rear thereof to the rear end of the lot, the houses themselves constituting or serving as a bulkhead so far as they extended. The difference in the level of the two lots here in question is about three feet.

These bulkheads were constructed by planting posts firmly in the ground with a cap on top and sills below, and putting boards perpendicularly on the outside—that is, the side next defendants' lot—extending from the surface of the lower lot to the height of about ten feet, and which thus constituted a fence above the bulkhead.

There was a like bulkhead at the westerly side of defendants' lot and at the easterly side of plaintiff's lot. The front of defendants' house is about eighteen feet from the street.

The deeds by which these lots were conveyed by Hinkel described them by metes and bounds, the several points of beginning being stated to be a point on the north line of Clay street a given number of feet and inches easterly from the east line of Webster street, the lots having each a frontage of twenty-seven feet and two inches, and a depth of one hundred and twenty-seven feet eight and one-quarter inches.

According to an affidavit made by A. H. Sanborn, a deputy of the city surveyor who recently surveyed defendants' lot, the gutterway of defendants' house projects about "four inches and to the true line" between the lots of plaintiff and defendant; that the bulkhead, which is about three feet high, extending from the front of the house to the street and from the rear of the house to the rear of the lot, is wholly upon the land described in defendants' deed as surveyed by him.

The affidavit of defendant Louis Kempff shows that the threatened removal or destruction of the bulkhead, stated in the complaint, was based upon the fact that he had made a contract with a workman to erect an artificial stone bulkhead "to the extreme eastern line" of defendants' lot as described in the deed, and the alleged threatened destruction of the existing bulkhead was for that purpose.

The affidavits further show that plaintiff and her husband entered upon the occupancy of their house and lot before defendants entered upon the actual occupancy of theirs, and that each party has ever since occupied their respective properties as marked by the bulkheads and fences.

In the affidavit of defendant Louis Kempff it is alleged that whenever said bulkhead needed repairs he repaired it at his own cost; "that plaintiff has made repairs upon said fence or bulkhead, but, saving and excepting said repairs, plaintiff has not, nor has any predecessor of hers, since the time of said Henry Hinkel, exercised any dominion over the same," and that defendants have never known until within the last two months that plaintiff claimed any interest in the land conveyed to deponent by Hinkel, or in the fence or bulkhead on said land.

In plaintiff's affidavit in reply she says that about seven years ago the defendant's workmen, in his absence, made some repairs on the bulkhead at the northerly portion; that she told the workmen to desist, but they completed the repairs nowithstanding her objections; that Mr. Kempff called upon her and said: "The workman made a mistake in repairing your fence, but the amount was small and he paid it himself." She further stated in said affidavit that there was a similar bulkhead at the western side of the defendants' lot, which defendant said he had to keep in repair. She further states that about two months before this suit was commenced defendants entered into negotiations for the sale of their property to one H. C. Crane; that Crane caused a survey of the lot to be made; that said survey showed that defendants were not in possession of a strip about eight inches wide along the easterly side of their lot upon which said bulkhead rested; that Crane refused to complete the purchase until he could be put in possession of the whole lot; that defendants then requested her to move the bulkhead and fence eastward eight inches, or to execute a quitclaim deed prepared by them, which described the lot as described in the deed from Hinkel; that she refused to do either; that she told Mr. Kempff that he knew she had always claimed and repaired the bulkhead, and that he and his wife had acquiesced for fourteen years and treated the bulkhead as the boundary; that Mr. Kempff replied "that neither he nor his wife knew that he or she owned anything on the east side of his

house until Crane had it surveyed." No reply was made to this affidavit.

In the affidavit of Louis Kempff it was further said that, during his negotiations with Hinkel for the purchase of his lot, Hinkel informed him that the "deed conveyed the land to about four inches east of the east line of the house, in order to give room for the projection of the roof or gutterway, so as not to infringe upon the adjoining lot."

Defendants also read an affidavit made by William Hinkel, who testified that he knew said row of houses built by his brother (now deceased), and also knew the plans in regard to the location of the houses, which was to leave about four inches space on the east side of the houses for the overhanging gutters.

It was stipulated that each lot was assessed according to the description contained in the deeds from Hinkel, that a valuation was put upon the real estate, and also upon the "improvements thereon," and the parties respectively had paid all the taxes so assessed.

I think the injunction should have been allowed to stand until the trial. The only relief sought in the case was an injunction to restrain the attempted removal of the bulkhead, and was not merely ancillary to other relief sought by the complaint, and its dissolution was practically equivalent to a dismissal of the action, since its mere pendency would not only not prevent a removal of the bulkhead and an encroachment upon the premises claimed by plaintiff, but would probably necessitate another and different form of action to finally determine the rights of the parties. Of course, there may be cases where the dissolution of a preliminary injunction would be proper notwithstanding a permanent injunction was the only relief sought, but I think this case is not one of them. The general proposition above stated is sustained in *Porter v. Jennings*, 89 Cal. 440, where numerous authorities are cited. "The mere existence of a doubt as to the title does not of itself constitute sufficient ground for refusing an injunction." (*Hunt v. Steese*, 75 Cal. 624; citing Kerr on Injunctions, 2d Am. ed., 13, and *Hess v. Winder*, 34 Cal. 270.) "It is the common practice at this day for the court to issue injunctions where the title is in dispute. . . . . The jurisdiction of the court in these cases is asserted for the preservation of the

property pending proceedings at law for the determination of the title of the parties." (*LeRoy v. Wright,* 4 Saw. 535.) In *Hunt v. Steese, supra,* it was further said: "Not only should there be an answer to the merits, but it should be made reasonably certain by the pleadings and the affidavits that the attack upon the patent [plaintiff's title] will be ultimately successful."

I think the pleadings and affidavits in this case do not make it "reasonably certain" that defendant had a right to remove the bulkhead "eight inches in an easterly direction," as he attempted to do after he had demanded that plaintiff should do it. Mr. Hinkel, being the owner of these and other lots, improved them by the erection of houses, bulkheads, and fences, making each ready for occupancy, and sold them, putting the purchasers in possession of the respective lots just as they were inclosed and improved. No survey was made at the time of the sale of these respective lots, nor were the boundaries marked upon the ground otherwise than by the improvements. It may be inferred from the description contained in each deed that Hinkel had surveyed them, or at least had measured the distance from Webster street to the west line of each lot, but it does not appear that the lines had ever been marked upon the ground otherwise than by the improvements. In the absence of other controlling evidence, it must be presumed that the lines marked by the improvements correspond with and mark the lines as fixed by Hinkel's measurement or survey, and, assuming the city surveyor's measurement is precisely accurate, it only shows an error in Hinkel's measurement. But the lines designated by the improvements—they being the monuments fixed by the original survey—control distances, and fix the actual location upon the ground.

In *Penry v. Richards,* 52 Cal. 675, the lot in question was described by its number as shown on the official map. The court said: "The court below ignored the evidence tending to show the location of the Haley stakes, and decided the case upon the theory that the demanded premises were to be ascertained by running the courses and distances from the initial point of Haley's survey, without regard to the monuments by him erected. This was a violation of well-known principles applicable to the mode of ascertaining the true position of lands described in deeds of conveyance."

In *Diehl v. Zanger*, 39 Mich. 601, the controversy related to the line between adjacent lots. There were forty-eight lots in the subdivision. A resurvey was made, and the surveyor testified that "the fences and buildings on all the lots are not correctly located." Cooley, J., after stating that the surveyor reached his conclusion by satisfying himself what was the initial point of Campau's survey, and then proceeding to survey the plat anew with that as his starting point said: "Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity. But no law can sanction this course. The surveyor has mistaken entirely the point to which his attention should have been directed. The question is not how an entirely accurate survey would locate these lots, but how the original stakes located them. No rule in real estate law is more inflexible than that monuments control course and distance—a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice, and necessity are never questioned. But its application in other cases is quite as proper, and quite as necessary to the protection of substantial rights. The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks set by Mr. Campau, and if those were discovered they must govern. If they are no longer discoverable, the question is where they were located; and upon that question the best possible evidence is usually to be found in the practical location of the lines, made at a time when the original monuments were presumably in existence and probably well known. As between old boundary fences, and any survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of a lot actually are." (See, also, *Flynn v. Glenny*, 51 Mich. 580; *Le Compte v. Lueders*, 90 Mich. 495; 30 Am. St. Rep. 450, and note.)

In view of these authorities and the long acquiescence of the

parties, the court should, for the purposes of the motion, have held that the improvements as made and located by Hinkel marked the true line of division between the lots, leaving the question as to how far other facts and circumstances should be permitted to affect the line thus marked to be determined upon the trial. Counsel have discussed the case as though it had been tried, and the appeal was from the final judgment; whereas, in cases of this character, as we have seen, the preliminary injunction should be continued, unless it is reasonably certain that the plaintiff cannot sustain her title. We think the defendant has not overcome the apparent right of the plaintiff to have the bulkhead and fences remain as they are until the final trial, and it would not seem that defendant could complain if the court had so ordered, after a silent and uncomplaining acquiescence for fourteen years.

The question remains, however, whether our conclusions hereinbefore indicated are affected by the statement in the affidavit of Mr. Kempff, that at the time of his purchase he was informed by Mr. Hinkel that the house was four inches from the line, supported as that statement is by the affidavit of the brother of Mr. Hinkel that he knew the plan upon which the row of houses was built, viz., to erect the houses four inches from the east line of the lots, so as to leave room for the overhanging gutterway.

So far as the representation to Mr. Kempff is concerned, it is not claimed that he ever communicated it to Mr. or Mrs. Bullard, while the uncontradicted affidavit of the plaintiff is to the effect that defendants did not assert any claim to the now disputed strip until the survey was made by Mr. Crane, but that, on the contrary, they said they did not know until that survey was made that they owned anything on the east side of the house; and, as to the affidavit of Mr. Hinkel, the effect of it is to show that all the houses in the row—the number of which is not stated—were built on the same plan with reference to the lines of the several lots, and if defendants' contention should be sustained all would be involved, and the rights and possession of each of the other owners would be rendered uncertain and liable to litigation. Such a result should be avoided, if legally possible. In the absence of any evidence that Hinkel gave like information to Bullard at the time of his purchase, such evidence is inadmissible to change or affect the lines marked by Hinkel himself upon the ground by

the erection of the fences. It is inconsistent with the fact that he put the purchasers respectively in possession of all the ground within the lots as marked by the fences, and if, before accepting the deeds, they had procured an accurate survey to be made, each might well have objected that the deed tendered to him did not accurately describe the lot he had purchased.

I do not think it necessary to discuss the question of long acquiescence as the source of a right not originally possessed by the plaintiff, whether operating by way of estoppel, or otherwise; but it should have great weight upon the question whether the injunction should be continued until the trial.

So, too, upon the facts before us the question of adverse possession need not be considered, for if the fences constitute monuments which control the call in the respective deeds as to the distance from Webster street, each party has occupied only the ground conveyed to him; and, if the monuments control the description in the deed, it must also control the description in the assessment roll.

I advise that the order appealed from be reversed, with directions to the court below to deny the motion.

Belcher, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed, with directions to the court below to deny the motion.

McFarland, J., Temple, J., Henshaw, J.