[L. A. No. 2229.   Department Two.—January 20, 1909.]

ELIAS B. POWELL, Respondent, v. H. M. ALLEN et al., Appellants.

BOUNDARY OF CITY LOTS—EJECTMENT—MONUMENTS USED IN SURVEY.— In an action of ejectment, brought to determine the true boundary line between adjoining city lots which formed part of an original large tract of land which had been frequently subdivided, the fact that a surveyor used a certain established stake in running the exterior boundaries of the subdivision in which the lots were situated is not controlling as to the boundary line in dispute, when it is not shown that such point was used in making the subdivision of the lots within such exterior boundaries.

ID.—BOUNDARY INDICATED BY OWNER—DECLARATION AGAINST INTEREST. —In such action, if the defendant while the owner of the property in controversy, indicated to the plaintiff by marks on the ground the boundaries of the lots, which were in accordance with the contention of the plaintiff after he became the owner of one of the lots, such an indication would be in the nature of a declaration by the defendant against his interest while he held title, and the court would be justified in holding the boundary so indicated as controlling.

APPEAL from a judgment of the Superior Court of Los Angeles County.   George H. Hutton, Judge.

The facts are stated in the opinion of the court.

O. B. Carter, for Appellants.

Haas, Garrett & Dunnigan, for Respondent.

HENSHAW, J.—The action is in ejectment, brought to determine the true boundary between lots 25 and 24 in block A of Hammell's subdivision of lots 31 and 32 of the Workman and Hellman subdivision of lot 2 in block 72 of Hancock's survey in the city of Los Angeles. Plaintiff claims that defendants, owners of lot 24, have encroached eight feet westerly upon his land, and of this strip eight feet wide possession is sought. Judgment passed for plaintiff, and from that judgment defendants appeal, bringing up the evidence for review upon a bill of exceptions.

CLV Cal.—11

The facts are not in serious controversy, and there is little or no difference between the litigants as to the principles of law applicable to the question involved. The facts may be briefly summarized as follows: Under the Hancock survey a map was recorded of blocks and lots. The blocks were of large size, block 72, within which is located the land in controversy, consisting of eight subdivisions containing approximately thirty-five acres each. The westerly half of block 72 passed into the hands of Workman and Hellman, who caused it to be subdivided. In this subdivision certain streets were delineated and named, and the effort was made to divide the block into five-acre tracts. In turn, two of these five-acre tracts, 31 and 32, passed into the hands of Hammell, who caused them to be subdivided into lots (speaking generally) of fifty feet frontage. The map showing his subdivision is also of record. In this subdivision lots 19½ to 33 inclusive are represented as fifty-foot lots, facing southerly on Willie Street. Lot 33 is the westerly of these lots. Still west of that is lot 1 (a corner lot) with a frontage on Willie Street of 142 feet, its westerly frontage being on Euclid Street. The record presents the testimony of the engineer Stephenson, who made the survey and plat of the Workman and Hellman subdivision. He testifies that he took for his starting point the corner stake of the old Hancock survey which marked the common corner of lots 2, 1, 7 and 8. This corner gave the middle line of block 72, and consequently the easterly line of lots 31 and 32, subsequently divided by Hammell. He testifies also that he plotted Euclid and Willie streets, which first came into existence under the offer of dedication of his recorded map. The boundary between this medial line of block 72 and the lands to the east, was shown by an old fence, and later by a row of trees, conforming accurately to the initial point evidenced by the stake. No controversy has ever arisen between the owners of those adjacent tracts as to their true boundary line. No evidence was offered as to the method of survey adopted in the map of Hammell's subdivision, other than the internal evidence upon the face of the map itself. From this it would appear that the exterior boundaries of the five-acre lots 31 and 32 were delimited by a survey which also commenced at the point indicated by the old corner stake of the Hancock survey. But this evidence goes.

only to the exterior lines of the tract. There is nothing to show what point was taken as the initial point for the subdivisions into fifty-foot lots. ·Now the result of all this is that the southerly frontage of block A shows upon the map 892 feet, while upon the ground it is 884 feet. There is thus a shortage of eight feet. Manifestly, if measurements are taken from the common corner of Willie and Euclid streets on the west and carried eastward, giving each lot owner the land the map calls for, it would result in throwing this shortage upon the extreme easterly lot, 19½. Upon the other hand, if the point indicated by the old Hancock stake to the east be adopted as the initial point, and the line be run westerly in like manner, it would throw the shortage upon lot 1. In precisely this way has the controversy arisen. The plaintiff running his line from Euclid Street eastward, the defendant running his line from the Hancock stake westward, the former overlaps on 24, the latter overlaps on 25. Thus the whole question resolves itself into this: What shall be regarded as the true and superior monument and starting point for the running of this line? Appellant, of course, contends for the Hancock stake. If the evidence supported his contention that the Hancock stake was the original monument from which the lots of Hammell's subdivision were measured and laid off, the question would be extremely simple. (*Bullard* v. *Kempff,* 119 Cal. 9, [50 Pac. 780].) It is shown that the surveyor of the Workman and Hellman subdivision used this Hancock stake as a starting point. It is shown, as has been said, that the surveyor of the Hammell subdivision used this stake in running the exterior boundaries of the five-acre lots. The Hancock stake thus is entitled to be considered a monument of dignity and importance. But it is not shown, as has been said, that the subdivision of the lots within these exterior boundaries was made by taking the Hancock stake as the initial point of measurement. The record upon this is entirely silent. We have, then, upon the easterly boundary of the block the Hancock stake, upon the westerly another well-defined monument—the corner of Euclid and Willie streets. The court adopted this corner as the monument for running the measurements of the lots, and it may not be said that it was without justification in the evidence so to do. For it is shown that the city, in its surveys for street work

and the like, has used this corner as the controlling monument. It is shown that the property owners upon Willie Street, as well as those upon Lanfranco Street, to the north of Willie Street, also used this easterly line of Euclid Street as the point from which to start their measurements in defining their lots, and as touching particularly this defendant Allen it is shown that while he held title to lots 28, 27, 26, 25, and 24, he indicated to this plaintiff upon the ground a stake which he declared to mark the southeasterly corner of lot 28. Here, in a certain sense, was a declaration against interest while he held title (Code Civ. Proc., sec. 1849.) Taking this southeasterly corner of lot 28 as the starting point, and carrying the measurements easterly from that point, it would demonstrate an encroachment by defendants of eight feet upon plaintiff's lot 25, which lot also plaintiff acquired from defendant Allen. In this situation and under these circumstances it may not be said that the court erred in adopting the southeastern corner of Euclid and Willie streets as the point of commencement for running the line of these lots as between this plaintiff and the defendants.

The judgment appealed from is therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.