[No. 5688.]

HENRY PENRY *v.* J. T. RICHARDS, I. B. PIERCE, C. C. RYNERSON. C. E. LATAILLADE, AND O. N. AMES.

OFFICIAL MAP AS PORTION OF A DEED.—Where a deed refers to a map as "the official map" for a more specific description of the property conveyed, the map which is the official map at the date of the deed must be taken as the map referred to by the grantor, and such map must be considered as constituting a portion of the deed.

POINTS WHERE MONUMENTS HAVE BEEN ESTABLISHED TO CONTROL.—Where a map which has been made part of a deed purports to have been drawn according to a certain survey, the deed must be considered as referring to

the monuments of that survey; and if the evidence shows the points where the monuments had been established by the surveyor, such points must control in determining the location of the property.

APPEAL from the District Court, First Judicial District, County of Santa Barbara.

The action was brought to recover damages for a trespass alleged to have been committed by the defendants " in tearing down and destroying a large amount of valuable fence, and in trampling down and destroying a large amount of grain." Richards was the Mayor, Lataillade, Rynerson, and Pierce were members of the Common Council, and Ames was City Marshal of the City of Santa Barbara. In 1867, April 22nd, the Town of Santa Barbara, being the successor in interest of the City of Santa Barbara, granted to P. C. Carillo a block of land within the limits of the town known and described on the official map as Block No. 6, containing one hundred and fifty square yards. On the 24th of February, 1876, Carillo conveyed the property to the plaintiff, who was the owner at the time of the alleged trespass. The block is bounded by the southeasterly line of Mission Street, as laid down on the official map, and the defense was that the plaintiff's fence, or so much of it as was removed, was within the lines of Mission Street, and not upon the block as described in the official map.

At the time it was shown that, in 1851, the City of Santa Barbara, being the owner of all the lands within its corporate limits, the city authorities employed one Haley to make a survey of the city lands, and to lay the same off into blocks and streets, and to make a map thereof, the blocks to be of the uniform size of 450 feet square, and the streets to run at right angles with each other, and to be of the uniform width of sixty feet, except two streets—State and Carillo Streets—which were to be each eighty feet wide. Haley made the survey, and marked each corner of every block with a redwood stake about eighteen inches long driven into the ground sixteen inches, leaving two inches protruding as the monuments. There were no other monuments. He returned no field-notes, but made a report, in which he shows the initial point to be at the intersection

of the southwesterly line of State Street and the northwesterly line of Carillo Street, the base-line being the southwesterly line of State Street. Haley employed a draftsman named Brady in San Francisco to make a map, which was done a few weeks after the survey was made, and was submitted to the city officials and paid for by them, but was never adopted as the official map. The map did not show any initial point or any points of the compass, nor courses nor distances, except figures to indicate the size of the blocks.

In 1853, the city authorities employed Vitus Wackenreuder, a surveyor, to make a map in accordance with Haley's survey, which was done. This map and another, drawn by the same person of other lands, were declared by ordinance to be the official maps of the city lands. Afterward, an ordinance was passed opening a large number of streets, "laid down as such upon the map of the city, as surveyed by Salsbury Haley, and drawn by Vitus Wackenreuder."

In 1871, Booker, the Town Surveyor, made an official re-survey, substantially agreeing with Haley's, substituting iron monuments for the wooden stakes. It was found that some of the original measurements were inaccurate by a few inches in some places, and a few feet in others, usually making the blocks larger than four hundred and fifty square feet. Many of the stakes could not be found, but enough were found to guide the surveyor, and to indicate the location of plaintiff's block. This re-survey was approved and adopted by the Council, and the action of the Council was subsequently ratified by the Legislature. (See Stats. 1871–2, p. 78.) Plaintiff's fence was built after the re-survey, and in accordance with it.

This action, though ostensibly for a trespass, was really brought to test the question as to what is the official survey of the city.

The defendants had judgment, and the plaintiff appealed, his motion for a new trial having been denied.

The other facts are stated in the opinion.

*W. M. Francis*, for Appellant, relied chiefly upon *O'Farril v. Harney*, 51 Cal. 125.

*W. C. Stratton,* for Respondent, argued that as the deed referred to the map and not the survey, the map should control, and the monuments, which were not mentioned in the deed, could not be considered.

By the COURT:

The deed from the Town of Santa Barbara to Carillo—from whom plaintiff deraigns—described the premises conveyed as a piece of land, within the limits of the town, "known and described on the official map of said town as Block No. 6, and containing one hundred and fifty square yards." It was competent by parol evidence to identify the map referred to, and when identified, it was the duty of the Court to treat it as constituting a portion of the deed. The map made by Wackenreuder had already been declared by ordinance of the city to be the "official map," and even if another map had been referred to as the official map in conveyances made by the town previous to that declaration, there can be no doubt that, in deeds made after the passage of the ordinance, the words referred to the map declared to be official by the ordinance.

The Wackenreuder map having been identified as the map referred to, that map is found to be entitled on its face a map of the town "as laid out by Saulsbury Haley." These words are the equivalent of "as surveyed by Haley," and include a reference to the monuments erected by Haley. Thus the deed is to be construed as referring to the monuments; and if the evidence established the points where the monuments had been erected by Haley, such points should have controlled in determining the location of Block 6. The Court below ignored the evidence tending to show the location of the Haley stakes, and decided the case on the theory that the demanded premises were to be ascertained by running the courses and distances from the initial point of Haley's survey, without regard to the monuments by him erected. This was a violation of well-known principles applicable to the mode of ascertaining the true position of lands described in deeds of conveyance.

Judgment and order reversed, and cause remanded for a new trial.