Points Decided.

---

(December 28, 1914.)

## CAMERON LUMBER CO., Appellant, v. STACK-GIBBS LUMBER CO., Respondent.

### [144 Pac. 1114.]

REHEARING—FORMER DECISION — JURISDICTION — SUFFICIENCY OF EVIDENCE—NAVIGABLE STREAM—SORTING WORKS—BOOMS—OBSTRUCTIONS TO THE NAVIGATION OF PUBLIC STREAMS.

1. Granting a rehearing of a case does not *ipso facto* reverse a former decision, but it is suspended by the order of rehearing.

2. Where a rehearing is granted and the court fails to agree upon a decision in the case, it does not lose jurisdiction, and under section 3820, Rev. Codes, another hearing must be ordered.

3. Where there is a substantial conflict in the evidence, this court will not undertake to weigh the proof to ascertain which side has the preponderance, and where there is such conflict in the evidence, it will not disturb the findings of the trial court.

4. The navigable streams of this state are public highways, over which every citizen has a right to carry commerce in such manner and by such means as are best adapted to serve the purposes of the business in which he is engaged, but in doing this he must have due consideration and reasonable care for the rights of others to a like use of the waters of such stream.

5. Where booms and sorting works for logs placed in the river do, to some extent, form a hindrance to the free navigation of the river at times, such hindrance should be considered only an incident to the reasonable use of the stream for floating and securing logs.

6. For such purpose and as incident to the reasonable use of the river for running and securing logs, parties may use temporary sheer or guide booms to direct the logs or lumber into proper places into which to detain them for use.

7. If an obstruction merely impairs or renders more difficult the navigation of a stream without destroying it, an individual has no right for cause of complaint, because he has no right to insist upon the best possible accommodation.

APPEAL from the District Court of the Eighth Judicial District for the County of Kootenai.   Hon. Robert N. Dunn, Judge.

Action in equity by the plaintiff corporation, the owner of certain booms and sorting works near the mouth of Coeur d'Alene river, to enjoin the defendant, also the owner of certain booms and sorting works at the mouth of said river, from maintaining and operating said booms and sorting works. Judgment was entered in favor of defendant, and from this judgment and an order overruling a motion for a new trial, plaintiff appealed.   Judgment *affirmed.*

McFarland & McFarland, for Appellant.

The granting of the rehearing did not set aside the decision rendered by Justices Ailshie and Stewart, reversing the judgment of the court below.   It stands to reason that the decision of this court, reversing the judgment of the lower court, still stands.   (*Ashley v. Hyde,* 6 Ark. 92, 42 Am. Dec. 685; *Rawdon v. Rapley,* 14 Ark. 203, 58 Am. Dec. 370; *Morrow v. Weed,* 4 Iowa, 77, 66 Am. Dec. 122; *Hauser v. Hobart,* 22 Ida. 749, 127 Pac. 1002, 43 L. R. A., N. S., 410.)

An equal division of the court on a motion for rehearing, of a judgment of reversal previously rendered, leaves that judgment in force, and does not result in affirming the judgment of the lower court.   (*Carmichael v. Eberle,* 177 U. S. 63, 20 Sup. Ct. 571, 44 L. ed. 672.)

Where the waters of a navigable river are so used as to deprive a riparian holder of all access to the river from the land, or to the land from the river, or so as to injure the benefits or enjoyment of the riparian land or the business thereon, such use may be enjoined.   (*Ferry Pass Inspectors' & Shippers' Assn. v. White River Inspectors' & Shippers' Assn.,* 57 Fla. 399, 48 So. 643, 22 L. R. A., N. S., 345; *Smart v. Aroostook Lumber Co.,* 103 Me. 37, 68 Atl. 527, 14 L. R. A., N. S., 1083; *Reyburn v. Sawyer,* 135 N. C. 328, 102 Am. St. 555, 47 S. E. 761, 65 L. R. A. 930; *Powell v. Springston Lumber Co.,* 12 Ida. 723, 88 Pac. 97; *Hobart Lee Tie Co. v. Stone,* 135 Mo. App. 438, 117 S. W. 604; *Union Mill Co. v. Shores,* 66 Wis. 476, 29 N. W. 243.)

The only right that the Stack-Gibbs Lumber Co. had on the river between the lands of appellant was the right of naviga-

tion, but that right, though it gives the right to raft logs down the river, does not involve the right of booming them upon private property for safekeeping and storage, any more than the right to travel the highways justifies the leaving of wagons standing in front of private dwellings or stores. (*Lorman v. Benson*, 8 Mich. 18, 77 Am. Dec. 435; *Watkinson v. McCoy*, 23 Wash. 372, 63 Pac. 245; *Reeves v. Backus-Brooks Co.*, 83 Minn. 339, 86 N. W. 337; *Shephard v. Coeur d'Alene Lbr. Co.*, 16 Ida. 293, 101 Pac. 591; *La Veine v. Stack-Gibbs Lumber Co.*, 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666.)

E. R. Whitla and Voorhees & Canfield, for Respondent.

As a part of its appellate jurisdiction, the court may order a cause resubmitted for further argument, whenever it feels that it needs further light, or deems, for any reason, such rehearing necessary to a just decision.

"The power to grant rehearings is inherent—is an essential ingredient of jurisdiction, and ends only with the loss of jurisdiction." (*In re Jessup*, 81 Cal. 408, 21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594; *Fair v. Angus*, 6 Cal. Unrep. 283, 57 Pac. 385; *Mateer v. Brown*, 1 Cal. 231; *Grogan v. Ruckle*, 1 Cal. 193; *Hasted v. Dodge* (Iowa), 39 N. W. 668.)

When the original order for rehearing was made, the opinion previously delivered became nugatory and without further force and effect, unless put into operation again by a subsequent order of this court. (*Argenti v. City of San Francisco*, 16 Cal. 256, 277; *Pitkins v. Peet*, 99 Iowa, 314, 68 N. W. 705; *Stewart v. Stewart*, 96 Iowa, 620, 65 N. W. 976; *New York v. Miln*, 9 Pet. (U. S.) 85, 9 L. ed. 60; *Richards v. Burden*, 59 Iowa, 723, 7 N. W. 17, 13 N. W. 90.)

Respondent had the right to erect booms and works over the bed of the river or lake, wherever necessary to a reasonable enjoyment of the right of transportation of logs over the river, even though such bed had been owned by appellant. (*Small v. Harrington*, 10 Ida. 499, 79 Pac. 461; *Powell v. Springston Lbr. Co.*, 12 Ida 723, 730, 88 Pac. 97; *Johnson v. Johnson*, 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240;

*Idaho Northern R. Co. v. Post Falls Lumber & Mfg. Co.,* 20 Ida. 695, 119 Pac. 1098, 38 L. R. A., N. S., 114; *Mashburn v. St. Joe Improvement Co.,* 19 Ida. 30, 113 Pac. 92, 35 L. R. A., N. S., 824; *Gaston v. Mace,* 33 W. Va. 14, 25 Am. St. 848, 10 S. E. 60, 5 L. R. A. 392; *Weise v. Smith,* 3 Or. 445, 8 Am. Rep. 621; *Harold v. Jones,* 86 Ala. 274, 5 So. 438, 3 L. R. A. 406; *Davis v. Winslow,* 51 Me. 264, 81 Am. Dec. 573; *Brown v. Kentfield,* 50 Cal. 129; *Lancey v. Clifford,* 54 Me. 487, 92 Am. Dec. 561.) If any inconvenience or damage falls upon the appellant thereby, the appellant cannot complain, and it is *damnum absque injuria.* (*Small v. Harrington, supra; Idaho Northern R. Co. v. Post Falls Lumber & Mfg. Co., supra; Attorney General v. Evart Booming Co.,* 34 Mich. 462; *Gaston v. Mace, supra.*)

It is necessary to float logs clear into the mouth of the river in order to reasonably enjoy the use of the Coeur d'Alene river.

"There must be facilities for regaining possession of the property after it has once been turned into the stream. For this purpose custom has recognized the right to make use of booms and sorting works." (1 Farnham on Waters and Water Rights, p. 426, par. 94; *Powell v. Springston Lumber Co., supra.*)

Where there is a substantial conflict in the evidence, the findings of the lower court are taken as conclusive. (*Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86; *Robertson v. Moore,* 10 Ida. 115, 77 Pac. 218; *Deeds v. Stephens,* 10 Ida. 332, 79 Pac. 77; *Abbott v. Reedy,* 9 Ida. 577, 75 Pac. 764; *Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719; *Pine v. Callahan,* 8 Ida. 684, 71 Pac. 473; *Sabin v. Burke,* 4 Ida. 28, 37 Pac. 352; *Miller v. Blunck,* 24 Ida. 234, 133 Pac. 383.)

"Temporary sheer or guide booms, though obstructions to navigation, may be used, as incident to the reasonable use of a river for running and securing logs, for the purpose of directing the logs or lumber into proper places in which to detain them for use; but the stream may not be permanently obstructed and converted into permanent places of deposit for logs by the construction of piers and booms." (*Gerrish*

*v. Brown,* 51 Me. 256, 81 Am. Dec. 569; *Davis v. Winslow,* 51 Me. 264, 81 Am. Dec. 573.)

"Every person has an undoubted right to use a public high- way, whether upon the land or water, for all legitimate pur- pose of travel and transportation; and if, in doing so, while in the exercise of ordinary care, he necessarily and unavoid- ably impede or obstruct another temporarily, he does not thereby become a wrongdoer, his acts are not illegal, and he creates no nuisance for which an action can be maintained." (*Davis v. Winslow,* 51 Me. 264, 81 Am. Dec. 573.)

TRUITT, J.—This action was brought in the lower court by the appellant, a corporation, the owner of certain booms and sorting works near the mouth of the Coeur d'Alene river, to enjoin the respondent, a corporation, and also the owner of other certain booms and sorting works at the mouth of said river below appellant's works, and in Lake Coeur d'Alene, adjacent to its said sorting works, from maintaining and operating said booms and sorting works.

The first question presented to this court is raised by ap- pellant's objection to a rehearing of the case, and upon his motion that a *remittitur* reversing the judgment of the lower court herein be sent down and transmitted to the clerk of said court. The grounds and reason for such objection and motion are specifically stated therein. For the purpose of consider- ing this motion and appellant's objection to a rehearing at this time, it is only necessary to state that this cause was heard on appeal on December 5, 1913, by this court, Chief Justice Ailshie and Justices Sullivan and Stewart then com- posing the court and sitting at the hearing of said case; and that thereafter, on January 17, 1914, the judgment of the court below was reversed, Justice Stewart handing down the opinion, which was concurred in by Chief Justice Ailshie, but Justice Sullivan did not concur in the decision and filed a dissenting opinion thereto. The respondent made applica- tion for a rehearing, and after due consideration of said application a rehearing was granted, and on March 23, 1914, the case was reheard and reargued before this court, which

at that time was composed of Chief Justice Ailshie, Justices Stewart and Sullivan. After this rehearing and before a decision and determination was had in the case, Justice Stewart was stricken with a serious illness and was removed from the state for medical treatment, and on the 25th day of September, 1914, he died without having participated in the decision or consideration of the case after such rehearing. After the first rehearing and sudden illness of Justice Stewart, which incapacitated him from further consideration of the case, it seems that no agreement or decision of the case was reached by Chief Justice Ailshie and Justice Sullivan, and that on June 30, 1914, they concurred in and made an order directing that the cause be resubmitted for further argument at the next Coeur d' Alene term of this court, this being the only order that was made or entered in the record.

Counsel for appellant concedes that this court can in the exercise of its sound discretion grant one rehearing for good and sufficient reasons shown, but they contend that, in the first place, the petition or application for a rehearing was in this case insufficient and that, from a strictly legal standpoint, respondent was not entitled to a rehearing upon any ground or reason stated in such application, and that after having been granted a rehearing and this court having failed to agree upon a determination of the case after such rehearing, it does not have jurisdiction to order another hearing.

As to the point in support of appellant's motion which in effect is that respondent was not entitled to the first rehearing upon any ground or reasons stated in the application, it is without merit, for this court in its sound discretion granted the rehearing, and that question is therefore settled and cannot be considered at this time. In regard to the other contention in support of said motion, which is in substance that because this court failed to decide the case after the first rehearing it lost jurisdiction to act further in the matter, and having lost power to change the former adjudication that must in effect leave or affirm this adjudication as the decision of the case, we cannot reach the conclusion contended for by appellant. It is true that the granting of a rehearing does

not *ipso facto* reverse the former decision, but we think that from the very moment a rehearing is ordered in any given case the original decision is thereby suspended. By that order the court throws doubt upon the correctness or justness of its decision. It in effect says by such order that it is not fully satisfied to let that decision stand as the final determination of the case. Then, if the court is not satisfied with the decision, the only way to be satisfied with it is to rehear and re-examine it. Until this is done, the decision is tainted with doubt and cannot be taken as the ultimate conclusion of the court. The order of rehearing does not either affirm or reverse the former opinion, but simply suspends it for further consideration. It would be just as permissible to say that the order of rehearing reverses the opinion as to say that it affirms it. If, after the examination of a petition for rehearing, the court decides that it is without merit, a rehearing is denied, and the court then adheres to its former decision that *becomes* the final determination of the case. But if after consideration of the petition and a further examination of the record, the court has some doubt as to the correctness of the determination it has reached, a rehearing is ordered, its former decision is by this order suspended until the rehearing is had, and then the case is disposed of as may seem just and proper without regard to the former decision. If, upon a rehearing, this decision still merits the approval of the court, it is affirmed; if not, it may be modified, or in effect entirely reversed. Of course, if the decision is approved after this rehearing, it would be a useless task to formulate another opinion in the case where the court was convinced that its former opinion correctly expressed its views as to the proper determination of the case.

In *Argenti v. City of San Francisco*, 16 Cal. 277, we think Chief Justice Field correctly states the rule in regard to rehearings as follows: "A rehearing was granted in that case, and no one is better aware than the learned counsel for the defendant, that when a rehearing is granted, the opinion previously delivered falls, unless reaffirmed after the reargument. Until such reaffirmance, the opinion never acquires

the force of an adjudication, and is entitled to no more consideration than the briefs of counsel. The opinion subsequent to the reargument constitutes the exposition of the law applicable to the facts of the case, and the only one to which the attention of the court can be directed.''

*Hauser v. Hobart*, 22 Ida. 749, 127 Pac. 1002, 43 L. R. A., N. S., 410, is a case referred to in the brief of appellant on this motion. In that case a rehearing had been granted, and after such rehearing this court said: ''After a most careful reconsideration of the case, we are convinced that there is no reason for changing our former opinion.'' This clearly indicates that the case had been reconsidered and re-examined, and if the court had not been convinced of the correctness of its former opinion it would have reached a different determination of the case.

In the case at bar, while Justice Stewart was out of the state, on June 30, 1914, Chief Justice Ailshie and Justice Sullivan having failed to agree upon a decision in the case after the first rehearing, ordered that it be again resubmitted for further argument at the next regular Coeur d'Alene term. Now, it seems to us that under sec. 3820, Rev. Codes, it was the plain duty of the court, under this condition of the case to order this rehearing. That section says: ''The concurrence of two justices is necessary to pronounce a judgment; if two do not concur, the case must be reheard.'' It seems from the record that after this rehearing and the sudden illness of Justice Stewart, there were only two justices who could decide this case, and when they failed to agree upon a decision, under that statute they were *required* to make the order of rehearing, which they did.

We think this rehearing was properly ordered and that the case must be now disposed of upon its merits. The objection to the rehearing of the case is therefore overruled, and the motion herein denied.

This brings us to a consideration of the case upon its merits. The action was brought by appellant, the Cameron Lumber Co., a corporation, the owner of certain booms and sorting works near the mouth of the Coeur d'Alene river, to enjoin the

respondent, the Stack-Gibbs Lumber Co., also a corporation and the owner of certain other booms and sorting works at or near the mouth of said river, below appellant's works and in Lake Coeur d'Alene adjacent to its said sorting works, from maintaining and operating said booms and sorting works.

The complaint in this action in substance alleges the incorporation of the plaintiff company, appellant herein, and the incorporation of the defendant, and that plaintiff was at all times mentioned in the complaint and now is the owner and entitled to the immediate and exclusive possession of certain lands situated in Kootenai county, state of Idaho, described as follows: Lots 1, 2, 3 and 4, in sec. 36, township 48 north, range 4 west of Boise meridian; and a portion of lot 1, all of lot 2, and a portion of lot 3 in sec. 1, township 47 north, range 4 west, Boise meridian. These lands border on and along the Coeur d'Alene river, which is a navigable stream and runs through said lands.

It further alleges that plaintiff kept and maintained on said lands along the source of the river certain sorting works and a log-race constructed of piling and timber for receiving and sorting sawlogs and other timber for its own use and for the use of the public generally for compensation; that said pilings, sorting works and log-race are necessary for the use of plaintiff in its business of handling logs and timber products for the public and for its own use; that in the construction, maintenance and operation of said sorting works and log-race, the plaintiff has never and does not now interfere with the free navigation on said river for boats, logs or timber, and that at all of the times herein mentioned, said river at said sorting works has been free and clear of all obstructions and has been and now is open for navigation of boats, logs and all kinds of timbers; that on or about March 16, 1912, defendant without plaintiff's permission wrongfully obstructed its navigation of said river at and along where its lands border thereon, by driving pilings and maintaining across said river booms, and by then and there, without the consent of plaintiff and against its will, attaching booms to pilings and trees, owned and maintained by plaintiff and upon

its own lands, and by constructing other sorting works which were tied to the sorting works of plaintiff and to trees or other objects upon its lands, and by stretching sheer booms along and on plaintiff's land and on its sorting works in said river and lake, thereby depriving it of the free use and enjoyment of its lands and sorting works and preventing it from carrying on its business of receiving, sorting and booming logs for itself and for the public; that defendant gave out and threatened that it would continue to maintain its works and booms, thereby interfering with the sorting works of plaintiff, and that unless restrained by an injunction, defendant will continue so to do and plaintiff will thereby suffer great and irreparable damage; that the acts mentioned constitute a nuisance by interfering with the free navigation of said river and preventing the use by plaintiff of its said sorting works.

The answer of defendant, respondent herein, denies mainly the averments of the complaint and affirmatively alleges that it was and is the owner of a large quantity of sawlogs, tributary to said river and above the sorting works of plaintiff; that it became necessary for defendant by means of its said sorting works to receive, sort and boom its logs, and the logs of the public generally, coming down said river at the point of plaintiff's sorting works; that there is no other suitable place on said river at which defendant could maintain its works or sort logs for itself or the public, and that plaintiff was endeavoring to create a monopoly by means of its sorting works in handling and sorting logs for the public generally.

The answer also alleges that plaintiff did not keep its said sorting works in repair and that they were virtually worthless, that the logs or other material coming down said river would slip through said sorting works and become lost. The answer further alleges that along the shore of Lake Coeur d'Alene, beyond the point where the Coeur d'Alene river empties into the lake and beyond the lands of the plaintiff, the defendant is in process of securing a tract of land from the government of the United States bordering on said lake, and in conjunction with others, has driven piling into the

lake-bed along the lake shore of said lake, in front of said last mentioned land, for the purpose of receiving logs belonging to it and to others, as they come out into the mouth of the river and are carried into the lake by the current of the river; that the water begins to rise in March of each year and continues to rise until the month of June, and during that period of high water, especially during said months, timber products, such as logs, poles, stulls, and ties cut along said river and its tributaries, are placed in said river and tributary streams and floated down into Lake Coeur d'Alene, where they are cut as herein alleged; that at the time of the commencement of this suit the Coeur d'Alene river was at its flood and in many places overflowing its banks, and many millions of feet of logs were floating down the river for the purpose of being put into the booms of Lake Coeur d'Alene; that at the time the defendant commenced the construction of its receiving booms, there was in said river and along the banks tributary thereto for the purpose of being flooded down the river and caught in said receiving booms during the high-water season of the year 1912 between thirty and thirty-five millions of feet of logs and other timbers which were caught in defendant's receiving booms; and that it is necessary that all of said logs be floated down said river during the high water, for the reason that during other seasons of the year the tributaries of said river become so shallow that sawlogs cannot be floated therein; that the logs floated down in high water and caught and sorted in defendant's sorting works were of the value of $300,000; that the volume of logs floated down the Coeur d'Alene river will increase each year, and there now exists along said river and its tributaries many billions of feet of logs, timber and its products, which will have to be floated down said river, through its booms at or near the mouth thereof, in said lake, and defendant has constructed its receiving booms and sorting works in the position in which they now are, for the purpose of catching and receiving said logs as they float out on said lake, it being the owner of a large part of the saw timber yet tributary to said Coeur d'Alene river, and which must be floated down to said lake; that prior

to the construction of said booms and sorting works by defendant the plaintiff went upon said river at the mouth thereof and erected a log-race and sorting works, and for that purpose drove numerous piles into the bed of the river, which said piling, sorting works and log-race of the plaintiff occupy from one-third to one-half of the width of the said river; but that plaintiff is not at the present time and was not at the time of commencing this suit or during the spring of 1912 or at the time the defendant's booms were constructed, using or attempting to use its sorting works or log-race for any purpose; that the plaintiff has driven its piling out into Lake Coeur d'Alene for a distance of from six hundred to one thousand feet from the mouth of the river, and in order to protect the logs of defendant and the logs of other owners from floating down the river and from having their logs entangled with the logs of plaintiff through and by reason of its openings in its booms and sorting works, and to prevent such obstruction to the free floating of the logs into said lake, defendant constructed a boom parallel to the booms of plaintiff, and for this purpose only.

The answer further denies that it attached said booms or any booms to pilings or other property owned or maintained by plaintiff; denies any wrongful acts on its part in connection with the erection or maintaining of its said booms and sorting works or that plaintiff has been deprived of the use or enjoyment of said river at said point or elsewhere, and denies that plaintiff has been deprived of the use or enjoyment of the right of ingress or egress from its said lands to the river or that it has been deprived of any rights whatever or damaged by the acts of defendant in any sum whatever, or at all.

Some affirmative matter was set up by the defendant as a defense to plaintiff's complaint to the effect that the Coeur d'Alene river from the point where it empties into Lake Coeur d'Alene extends eastward for a distance of about sixty miles and is a large navigable river open to the navigation of steamboats and other water craft and also for the floating of sawlogs and other timbers from the headwaters of said river down

into said lake. But, as we understand it, there is no issue made by plaintiff as to the fact that said river is navigable and that said river and its tributaries are largely used for the purpose of floating down logs from adjacent timber to Lake Coeur d'Alene. But the defendant also set up as affirmative matter that the plaintiff's sorting works were constructed for, and resulted in delaying defendant and others from receiving logs and collecting the same for others and for themselves when floated down the river, in order that plaintiff might compel defendant and other owners of timber along said river and its tributaries to pay plaintiff the large, exorbitant and unreasonable rental or toll for the use of its sorting works and receiving booms constructed as aforesaid at the mouth of the river; that theretofore a toll or rental of five cents per thousand feet had been charged for using the sorting works and booms of plaintiff which sum was a fair and reasonable amount to be charged for the use thereof, in addition to the actual cost of the labor of sorting and handling said logs, but that during the season of 1912 plaintiff demanded twenty cents per thousand feet for the use of its booms and sorting works in floating and sorting logs, and that this charge was and is exorbitant and unjust; that the defendant made no charge whatever to any person for the use of its receiving booms and sorting works, except the actual expense of handling and sorting the logs.

The pleadings were quite long in this case, but we think the foregoing summary thereof substantially shows the material issues upon which it was tried.

This being an action in equity, it was tried to the court upon the issues made in the pleadings. At the commencement of the trial, it was agreed and stipulated between the parties thereto that this cause and the case of *Stack-Gibbs Lumber Co. v. Cameron Lumber Co.* should be consolidated for the purpose of the trial and tried at one and the same time, and that the evidence in one case should be considered and tried by the court as evidence in the other. After the trial the court made findings of fact and conclusions of law in favor of respondent and against appellant, and thereupon

entered judgment ordering that appellant was not entitled to the relief sought, denying its application for an injunction and dismissing the cause. In due course of time appellant regularly gave notice of motion and motion for a new trial. The application of appellant for a new trial was regularly denied, and from the judgment entered against it and the order denying a new trial this appeal is taken.

As grounds for reversing said judgment, the appellant assigns and distinctly specifies seventeen alleged errors of the court that occurred at said trial. These relate to the admission of certain evidence, insufficiency of evidence to support the findings of fact made by the court, conclusions of the court that were contrary to law, that the judgment is contrary to the evidence, that the judgment is against law, that the court erred in entering judgment against appellant and in denying its motion for a new trial.

The first error relied upon by appellant is that the court permitted respondent to prove that logs could not be taken down the Coeur d'Alene river profitably or successfully in booms or tows. Appellant contends that this evidence was immaterial as the fact it tended to prove if established would not give respondent the right to interfere with its property, but we think there was no error in this ruling of the court, for the reason that the Coeur d'Alene river is navigable and open to public use, and the respondent had a right to use the river for transporting to market or to its place of business its logs and timbers in the most convenient and least expensive manner, so long as it did not unnecessarily interfere with the rights of appellant.

As to the second error assigned by appellant to the effect that the court erred in admitting certain testimony on behalf of respondent, tending to prove that the point on the Coeur d'Alene river at which appellant maintained its sorting works was the only practicable place on the Coeur d'Alene river for intercepting, receiving and sorting sawlogs and for sorting works intended for that purpose, we think that the court did not err in admitting this evidence, for the reason that the right to use the river for the purpose of transporting logs

and other timbers also carries with it the right in a reasonable manner to intercept them when they reach their destination at the most feasible and convenient place to receive them, so long as this does not unnecessarily interfere with the rights of others to the use of the river. To hold otherwise would render the right to the use of said river for navigating logs and other timbers of little practical value.

Assignment of error No. 3 relates to the ruling of the court in permitting the respondents to show the prevailing winds and the direction of the current of the river during the season for floating logs down the river. We do not think this was error. The respondent in the affirmative part of its answer alleges that appellant's sorting works were not kept in repair and that its logs as they floated down the river, went out through holes in said works and were lost on the lowlands beyond, or on the lakeshore. We therefore think that if the prevailing winds, or currents of the stream, tended to carry logs floating down the same over and against these works and through holes therein, this fact might be shown. Assignments of errors Nos. 4 and 5 alleged that the court erred in permitting respondent to show how many logs it owned in the years 1912 and 1913 and sorted during those years, but we think this testimony was permissible under the issues made by the pleadings and that there was no error in admitting the same.

Assignment of error No. 6 was as to the admission of evidence by the court tending to show that the Coeur d'Alene river was jammed and obstructed with logs in the year 1910, because appellant's sorting works were too small to handle them, but we think there was no error in the admission of this testimony.

The appellant's seventh alleged error, to the effect that the court erred in not separately stating its findings of fact and conclusions of law, we think is without merit. The court made its findings of fact and divided them into nineteen distinct numbered paragraphs, and then based upon them it specifically stated its conclusions of law in six numbered paragraphs.

We see no ground for complaint as to the *form* of these findings and conclusions.

The other assignments of error relate to three principal points of objection against these findings and conclusions, namely, (1) that the findings of fact, or at least most of them, are not supported by the evidence; (2) that said conclusions of law are contrary to the evidence; and (3) that said conclusions of law and judgment are against the law. Before going into the consideration of the objections pointed out by appellant relating to the insufficiency of the evidence to support said findings of fact, we will say that this court has in a number of well-considered cases approved and held to the doctrine that the findings of the lower court are conclusive, where there is a substantial conflict in the evidence upon questions of fact, and in support of this we refer to *Sabin v. Burke,* 4 Ida. 28, 37 Pac. 352, *Pine v. Callahan,* 8 Ida. 684, 71 Pac. 473, *Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719, and a number of other cases decided by this court, down to the later cases of *Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86, and *Heckman v. Espey,* 12 Ida. 755, 88 Pac. 80. This we accept as the settled doctrine of this court, and, therefore, where there is a substantial conflict of the evidence upon which any certain finding of fact is based, we will not disturb such finding.

Finding No. 7 is the first finding of fact to which appellant objects and assigns as the reason therefor that it is not supported by the evidence. In substance, this finding is that the defendant has not gone upon plaintiff's land and has not deprived it of the free use of the river at or along its banks, and has not prevented it from ingress to or egress from said lands by way of the river, and that defendant has not deprived plaintiff of the use or enjoyment of any of its piling, sorting works, log-race or lands or any of its property. Without going into any analysis of the testimony in support of this finding for the purpose of deciding as to the weight of the evidence, we think the record shows that this finding is not without substantial evidence to support it. The witness Strathorn testified on direct examination that the defendant's

works were fastened to the works of the plaintiff, but on cross-examination he was asked: "Q. You do not know of your own knowledge, do you, that the boom that was pointed out to you as the Stack-Gibbs boom was attached to the piling belonging to the Cameron Lumber Co.? A. I do not. Q. It was told to you that it was, was it not? A. I took it for granted, yes. Q. Who told you? A. Mr. Smith,—Mr. Crego was on the boat but it was Mr. Smith that told me. Q. You say that the defendant company attached to the works of the Cameron Lumber Co., the only attachment that was made was at the upper end of the jack where the sheer boom was attached to the piling? A. Yes. Q. It was in the water, was it not? A. Yes." Harrie Deroshie testified in regard to the gaps in respondent's works being open in March, 1912, and said that logs were running through the gaps of appellant's sorting works before the sheer boom was placed along parallel thereto by the respondent company; and this witness also testified that the piling to which said sheer boom of respondent was tied or attached was a piling driven in the river by the Stack-Gibbs Lumber Co., the evidence of this witness upon this point being as follows: "Q. Whose piling is that, if you know? A. Stack-Gibbs. Q. Who drove it? A. Stack-Gibbs." This witness also testified as follows: "What is the fact as to the defendant's boom being attached to any piling constituting part of the Cameron Lumber Co. works? A. Not tied to any of their piling." The record shows that on the trial the respondent went into this question fully as to what was done in connection with this matter and how their works were operated, and we think the evidence shows that the appellant did not use its sorting works in 1912 and was not using them at the time respondent placed its sheer boom in the river, and that all of the logs received by the respondent company passed by the appellant's works down the channel of the river and into the receiving booms of the works of the respondent. The said sheer boom placed on the south side of the river parallel with the works of the appellant was placed there by the respondent to keep their logs from going through the openings of the respondent's works, which was

out of repair, and being lost in the lake or the lowlands beyond. It further appears that the appellant was notified that if they would keep these openings closed, then this sheer boom would be removed by the respondent, and that they neglected to do so.

Finding No. 8, which is also objected to by appellant, is in effect disposed of by what we have said in regard to No. 7, and we think the objections to this finding are without merit. Finding No. 9, in which the court finds that no act of the defendant has caused the plaintiff any pecuniary loss whatever and that plaintiff has not been deprived of any business and has not been deprived of the full opportunity to use its sorting works, if it so desired, by reason of the acts of the defendant, and has not lost any profits in the use of its sorting works by reason of any acts of defendant, and that plaintiff has not been damaged in anywise whatever by the acts of defendant, and will not be damaged by any acts which defendant has done or is now doing, we think is supported by substantial evidence and should not be disturbed by this court.

Finding No. 10 is in substance that in the driving of piling in the bed of the river by defendant and in stretching booms upon said river, as defendant has done, said defendant has not prevented the navigation of the river and has not prevented and has not interfered with the navigation of said river, and that defendant has not tied its boom to the sorting works or piling of the plaintiff, and that defendant has not created and has not maintained and is not now maintaining or creating any nuisance or damage to the plaintiff. There was some evidence tending to show that the stretching of the boom referred to in this finding would, to some extent, delay boats and logs that were navigating or being floated in said river, but we think that the respondent had a right to make a reasonable and prudent use of this river, for navigation, and to its use in connection with collecting its logs and passing them through its sorting works to their destination, as long as it conducted its operations in a reasonable and prudent manner and with due regard to the rights of others to exercise an equal privilege thereto. Some inconvenience or damage might

thereby fall upon the appellant, but any inconvenience or damage that might be caused by such reasonable use of the stream by respondent would be *damnum absque injuria.* (*Small v. Harrington*, 10 Ida. 499, 79 Pac. 461.)

The question of the reasonable use of a navigable stream, and to what extent the same may be obstructed by persons in exercising such reasonable use, is very fully discussed in *Davis v. Winslow*, 51 Me. 264, 81 Am. Dec. 573, which is a leading case upon this question. In that case, after reviewing numerous authorities, the court said:

"The general doctrine to be deduced from the authorities collated in reference to the use of navigable rivers or public streams as public highways is, that each person has an equal right to their reasonable use. What constitutes reasonable use depends upon the circumstances of each particular case; and no positive rule of law can be laid down to define and regulate such use, with entire precision, so various are the subjects and occasions for it, and so diversified the relations of parties therein interested. In determining the question of reasonable use, regard must be had to the subject matter of the use, the occasion and manner of its application, its object, extent, necessity and duration and the established usage of the country. The size of the stream, also, the fall of water, its volume, velocity, and prospective rise or fall, are important elements to be taken into the account. The same promptness and efficiency would not be expected of the owner of logs thrown promiscuously into the stream, in respect to their management, as would be required of a ship-master in navigating his ship. Every person has an undoubted right to use a public highway, whether upon the land or water, for all legitimate purposes of travel and transportation; and if, in doing so, while in the exercise of ordinary care, he necessarily and unavoidably impede or obstruct another temporarily, he does not thereby become a wrongdoer, his acts are not illegal, and he creates no nuisance for which an action can be maintained."

Appellant makes particular objection to that part of finding No. 12, in which the court states: "That said receiving booms and sorting works of the defendant are placed far out

in Lake Coeur d'Alene, far beyond the sorting works of the plaintiff, and do not interfere with the plaintiff's sorting works or other works, or the use there in any manner whatever." This entire finding does not relate to the sheer boom in front of appellant's sorting works, but only to the storage booms and sorting works of respondent located a considerable distance away from appellant's land and sorting works, and we think it is sustained by the evidence.

Counsel for appellant in their brief, at page 28, say that, "Finding No. 13 is to the effect that the works of defendant and respondent do not form a hindrance to navigation; that it can handle all the sawlogs coming down the river without permitting the same to jam, but that plaintiff's and appellant's works are insufficient to handle the logs that come down the river. This is against the weight of testimony that has been introduced touching this matter." There does appear to be some conflict in the testimony of the witnesses upon this point, but, as heretofore stated, this court will not undertake to weigh the proof to ascertain which side has the preponderance, and where there is a substantial conflict in the evidence it will not disturb the findings of the trial court, and, as the record shows at least a substantial conflict upon the main question involved in this finding, we are not disposed to disturb the same. Furthermore, in the judgment or decree in this case, the lower court makes this statement which we think is worthy of consideration by this court in considering the weight of the evidence upon which the various findings herein have been based, to wit: "Oral and documentary evidence was introduced, and thereupon the court personally inspected the booms, sorting works and premises in controversy in this action, and thereupon, upon said testimony and review and personal inspection of said premises so made by the court, the court made and caused to be filed herein its findings of fact and conclusions of law." But even if the booms and sorting works of respondent do in fact to some extent form a hindrance to the free navigation of the river at times, we think that might be considered only an incident to the reasonable use of this public waterway by respondent for floating and securing its logs.

In *Gerrish v. Brown*, 51 Me. 256, 81 Am. Dec. 569, the court says: "For such purpose, and as incident to the reasonable use of the river for running and securing logs, parties may use temporary sheer, or guide, booms to direct the logs or lumber into proper places, in which to detain them for use."

In Finding No. 14, the court found that there were no sufficient receiving works in the Coeur d'Alene river to handle the logs that annually came down said river without jamming the river and interfering with navigation, and also that during the spring of 1912 the Cameron Lumber Co. had its sorting works at the mouth of the river along the banks thereof, extending a short distance into the lake, and that said sorting works had jacks or openings on each side thereof for the purpose of attaching bag booms in which logs belonging to different companies and individuals were placed when said sorting works were operated; that during the season of 1912 these sorting works had six of such openings on the north side of the river and these openings were not protected or closed by any sheer booms or jack poles, or any means of preventing sawlogs from floating into the same; that logs floating into these openings from the north side would be, by the force of the current and wind, driven into and through said sorting works into the main waters of Lake Coeur d'Alene beyond, and that by reason of said openings so negligently and carelessly maintained in said sorting works, the logs belonging to the defendant and others became entangled, and were by the force of the current driven through said works and out into Lake Coeur d'Alene beyond. This finding seems to be sustained by substantial evidence. The appellant at said time was not attempting to use its works in any manner whatever, and it refused to keep its jacks closed so that others could have the reasonable use of the river in floating their logs.

In regard to the sheer boom placed along the south side of the river parallel to appellant's sorting works, it was the intention of the respondent, as shown by the record, to only temporarily maintain this boom for the purpose of protecting its logs from being lost by going through said openings in the works of appellant and out into the lake. The evidence shows

that the boom placed by respondent on the north side of the
river in front of lot 4 was only for a short time attached to
some brush or a tree until other arrangements for maintain-
ing it for the purposes then required could be made.   There-
after it was attached to a cluster of piling situated in the
river near the south side of the same.   This south bank of the
river along lot 4 of the land of appellant is low, and during
high water was almost entirely submerged thereby, and along
this low bank of the river a large quantity of underbrush or
shrubbery is growing into which logs coming down the river
are carried by force of the current and lodged or lost if not
by some means protected from doing so.   The record also
shows that lot 4 is a low, swampy piece of land through which
runs a canal or ditch, known as Howell's ditch, and when the
water is high this ditch fills with water and backs out across
lot 4, and the evidence shows that said sheer boom was only
placed there to prevent logs from going out through said ditch
and brush over this swampy land and lodging there or being
lost.   At that time the appellant was not using this land for
any purpose, and the piling to which this sheer boom along
the north side of the river was attached did not constitute any
part of appellant's works and had not been driven in the river
by it, but was placed there by the Northern Pacific Railroad
Co. some years before for the purpose of marking the channel
of the river.   Under such circumstances and conditions as
confronted the respondent at the time it placed and main-
tained said sheer boom in the river, if it had not been per-
mitted to do so, the right to use the river for the purpose of
floating logs would have been of no practical benefit to it.

In *Powell v. Springston Lumber Co.*, 12 Ida. 723, 88 Pac.
97, on this question of maintaining a boom on the river in
connection with floating and handling logs by parties engaged
in that business, the court said: "The construction and use of
booms is a necessary adjunct to the floating of logs, without
them it would frequently be impossible to handle the logs
where wanted for use.   The right to float logs down a stream
carries with it the necessary resultant right of employing
some reasonable means for intercepting them at their destina-

tion.'' Without reviewing at length the authorities presented by the briefs of counsel in this case on the subject, we think the doctrine of this court as to the right of obstructing the river by parties engaged in using the same for any legitimate purpose is very clearly stated in *Small v. Harrington, supra,* as follows:

''The rule governing cases of this character is that all parties interested in the free use of a navigable stream are subject to conditions that may exist in each particular case. No one has the right to arbitrarily obstruct a stream to the detriment or injury of his neighbor; each one is entitled to the free and reasonable use of the navigable streams of this state, and may place such reasonable obstructions on the stream so long as they serve a useful and beneficial purpose and leave a reasonable use to others interested. . . . . If an obstruction merely impairs or renders more difficult the navigation without destroying it, an individual has no rightful cause for complaint, because he has no right to insist on the best possible accommodation.''

There are some other objections urged by appellant to the findings of fact and conclusions of the lower court, but we have carefully examined them in connection with the evidence and do not think it would serve any useful purpose in disposing of this case for us to comment upon them, as our views upon the main questions presented by this appeal have been expressed already by what we have said in deciding the points which we have now considered and passed upon. Having reached the conclusion that there is no reversible error presented in this case, the judgment of the lower court is, therefore, affirmed. Costs awarded to the respondent.

Sullivan, C. J., and Budge, J., concur.