(October 8, 1915.)

## J. T. WOODLAND, Appellant, v. T. H. HODSON, Respondent.

[152 Pac. 205.]

Surveys—Boundary Lines—Acquiescence—Occupancy.

1. When a surveyor is called upon to locate government corners and lines, he is not employed as an arbiter of disputes between adjoining land owners, neither is it his province to correct mistakes in the original survey. It is his duty to locate the corners and lines as formerly established.

[As to evidence of lost corners, see note in 22 **Am. St.** 35.]

2. *Held,* that acquiescence, for a period of about two years, in a boundary line established by an erroneous survey does not make the line so established binding or conclusive upon owners of lands abutting thereon.

[As to adverse possession as arising from possession by mistake of one intending to claim only to true boundary, see note in Ann. Cas. 1912A, 450.]

APPEAL from the District Court of the Sixth Judicial District in and for Bingham County. Hon. J. M. Stevens, Judge.

Suit to quiet title. Judgment for defendant. *Reversed.*

A. S. Dickinson, for Appellant.

Where the division line between coterminous owners of land is in doubt or dispute, they may expressly agree to abide by a certain line as a boundary, and where the agreement is executed or acquiesced in, the boundary thus established becomes binding upon the parties and their successors in interest, notwithstanding it may vary from the true line of division. (*Dierssen v. Nelson,* 138 Cal. 394, 71 Pac. 456; *Bullard v. Kempff,* 119 Cal. 9, 50 Pac. 780; *Palmer v. Dosch,* 148 Ind. 10, 47 N. E. 176; *Washington Rock Co. v. Young,* 29 Utah, 108, 110 Am. St. 666, and note, 80 Pac. 382.)

A line is not fixed or located by a verbal agreement, by simply making the agreement. Actual possession must be taken up to the line, or something be done to execute the agreement in the direction of physical identification, as the erection of monuments, building fences or the like. (*Osteen v. Wynn,* 131 Ga. 209, 127 Am. St. 212, and note, 62 S. E. 37; *Brummell v. Harris,* 162 Mo. 397, 63 S. W. 497.)

Hansbrough & Gagon, for Respondents.

Where two coterminous proprietors agree upon the establishment of a line between their lands, and the line is so fixed and established by such agreement and is acquiesced in at least for a time, as in this case, the parties, or either of them, are estopped to deny it, or claim some other line, even though the time so acquiesced in is shorter and a less period than would be a bar under the statute of limitations. (*Cavanaugh v. Jackson,* 91 Cal. 580, 27 Pac. 931; *Blair v. Smith,* 16 Mo 273; *Smith v. Hamilton,* 20 Mich. 433, 438, 4 Am. Rep. 398; *Idaho Land Co. v. Parsons,* 3 Ida. 450, 31 Pac. 791; *Hoar v. Hennessy,* 29 Mont. 253, 74 Pac. 452.)

Such agreement is not within the statute of frauds, and it cannot afterward be controverted by the parties or their successors in interest. (*White v. Spreckels,* 75 Cal. 610, 17 Pac. 715; *Helm v. Wilson,* 76 Cal. 476, 485, 18 Pac. 604; *Orr v. Hadley,* 36 N. H. 575.)

MORGAN, J.—This action was commenced on July 11, 1912. The purpose of it is to procure a decree of the court quieting title in the appellant to a strip of land alleged in the complaint to be a part of the northeast quarter of section 6, township 3, south of range 36 east of the Boise meridian, and to procure an injunction restraining the respondent from entering said premises, harvesting or interfering with the crops upon said land or removing the same from the premises, and from doing any act that would interfere with appellant's possession thereof. The respondent is the owner of lot numbered 3 and the southeast quarter of the northwest quarter of said section 6, situated immediately west of and adjoining

appellant's land, and he contends that the strip in controversy is a part of his land above described and prays that his title thereto be quieted.

The case was tried by the court with the aid of a jury, to which interrogatories were propounded and a special verdict rendered as follows:

"Did the plaintiff and defendant, about July, 1910, employ A. E. Christensen, the county surveyor, to survey and establish the line between their respective tracts of land?

"Answer. . . . . Yes.

"Did A. E. Christensen, pursuant to employment by the plaintiff and defendant, survey and establish the line between the lands of the plaintiff and defendant about July, 1910?

"Answer. . . . . Yes.

"If you find that the plaintiff and defendant did employ A. E. Christensen and that the said A. E. Christensen did survey and establish the line between the lands of the plaintiff and defendant pursuant to said employment, did the plaintiff and defendant acquiesce in, and agree to it at the time the survey was made about July, 1910?

"Answer. . . . . Yes."

The court entered a decree quieting respondent's title to the strip of land in question, from which and from an order denying a motion for a new trial this appeal is prosecuted.

It appears from the record in this case that about 25 years ago, when the land now owned by the appellant was owned by one Gray and that now owned by the respondent was owned by one Keeney, the dividing line now in controversy was then in dispute; that Gray and Keeney, together with some of their neighbors and a man named Mackay, made search for the survey stakes and found the one marking the quarter section corner between the lands of these owners; that Mackay "was a kind of surveyor" and had a surveyor's instrument, and, at the request of Gray and Keeney, established their dividing line, and that they thereafter built their division fence on the line so established.

It further appears that after appellant purchased the Gray tract and respondent became the owner of the Keeney tract a controversy arose between them as to the dividing line, and in 1909 a civil engineer named Young was employed to locate it; that he made a survey which proved to be unsatisfactory and that on July 7, 1910, one Christensen, the county surveyor, was employed by these litigants and their neighbors to establish certain lines including the one now in controversy. There is some conflict in the testimony as to whether or not it was agreed between appellant and respondent that Christensen's survey should be final and conclusive upon them as to the location of the line. It is contended upon the part of respondent that it was agreed the survey should be binding, and upon the part of the appellant that this agreement was conditional and that it was to be conclusive only in the event that other land owners in the neighborhood would move their fences to conform to it. It further appears that the fence built by Gray and Keeney has never been moved and that the strip of land in controversy is still within appellant's inclosure.

The record further discloses that the appellant became dissatisfied with the Christensen survey, and there is evidence that about a year after it was made a contention again arose between the parties as to the correct location of their boundary line. Christensen in 1913 again made a survey and located the line at a different place from that established by his survey in 1910. His testimony was that his subsequent survey was made more nearly in accord with the United States government manual of surveys than was his former one, and while his testimony is unsatisfactory, it does establish that he is far from certain his survey made in 1910 correctly established the government corner, nor does he appear to be entirely satisfied that either of them did so. With respect to his survey made in 1910, he testified:

"Q. Did you follow the rule laid down in the government manual in making that survey?

"A. I didn't; I believe I violated the rule."

This case was tried and decided upon the theory that the first survey made by Christensen and acquiesced in at the time and for a short time thereafter, whether it correctly established the government corner or not, is conclusive upon them. This theory is erroneous.

When a surveyor is called upon to locate government corners and lines he is not employed as an arbiter of disputes between adjoining land owners, neither is it his province to correct mistakes in the original survey. It is his duty to locate the corners and lines as formerly established. In *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066, it is said:

"The purpose of a resurvey subsequent to the taking of title by purchasers and settlers is to ascertain the lines of the original survey and the original boundaries and monuments as established and laid out by the survey under which the parties originally procured their titles. (*Martz v. Williams,* 67 Ill. 306.) On such resurvey or re-established boundaries and monuments the question of the correctness of the original survey cannot enter into the matter at all, and is a matter that does not concern the surveyor, and is not a question to be ascertained by him. (*Diehl v. Zanger,* 39 Mich. 601; *Penry v. Richards,* 52 Cal. 672; *Bullard v. Kempff,* 119 Cal. 9, 50 Pac. 780.)" See, also, *Washington Rock Co. v. Young,* 110 Am. St. 666, 681 (note III), and cases there cited.

The testimony of Christensen discloses that instead of following the government manual and re-establishing the government corner and line in his survey of 1910, he attempted to apportion the shortage of land in the section according to no particular rule of surveying or, at best, according to one of his own. It follows that the parties are not bound by this survey.

It is contended by respondent that since the parties acquiesced in the line established by Christensen in 1910, they are bound by it whether it is accurate or not. This would be true if the facts in this case brought it within the rule relied upon, which is stated in case of *White v. Spreckels,* 75 Cal. 610, 17 Pac. 715, as follows:

"Where coterminous proprietors of land in good faith agree upon, fix and establish a boundary line between their respective tracts of land, in which they acquiesce, and under which they occupy, for a period equal to that fixed by the statute of limitations, the line as thus established is binding upon them, and those holding under them, or either of them." (See, also, *Idaho Land Co. v. Parsons,* 3 Ida. 450, 31 Pac. 791; *Dierssen v. Nelson,* 138 Cal. 394, 71 Pac. 456; *Cavanaugh v. Jackson,* 91 Cal. 580, 27 Pac. 931; *Palmer v. Dosch,* 148 Ind. 10, 47 N. E. 176, and *Bayhouse v. Urquides, supra.*)

In some states it has been held that long acquiescence in a boundary line, although for a less period of time than that fixed by the statute of limitations, is conclusive upon the parties and their successors in interest, and the rule is thus stated in case of *Smith v. Hamilton,* 20 Mich. 433, 4 Am. Rep. 398 (quoting from the syllabus):

"A parol agreement, long acquiesced in, to settle a boundary between adjoining proprietors, being the result of an honest attempt to fix the true boundary, and according to which they have actually occupied, will be held good in an action at law, although the time has not been sufficient to establish an adverse possession."

It is unnecessary to here decide which of the foregoing statements of the rule is correct, for the facts in this case do not bring it within either version of it. At the expiration of two years and four days from the date of the survey this action was commenced, so that the parties neither acquiesced in nor occupied, according to the line established by it, for a period of time equal to that fixed by the statute of limitations, as stated in one case, nor was their agreement long acquiesced in nor was respondent's occupancy thereunder actual and of long duration as contemplated in the other.

Whether the line run by Mackay at the instance of Gray and Keeney became, by long acquiescence, the boundary line, and whether the present owners have agreed that it be abrogated and the original government survey be re-established for the purpose of marking their boundary, are questions

which cannot be decided until the facts are fully disclosed upon a hearing in the district court.

The judgment is reversed and a new trial granted. Costs are awarded to the appellant.

Budge, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by my associates. The cause was tried by a jury and certain questions submitted to it and the answers thereto were adopted by the court as a part of its finding of facts. The jury found (1) that the plaintiff and defendant, about July, 1910, employed A. E. Christensen, the county surveyor, to survey and establish the line between their respective tracts of land; (2) that Christensen, pursuant to said employment, did survey and establish the line between the lands of plaintiff and defendant, about July, 1910; and (3) that after said line was so established by Christensen the plaintiff and defendant acquiesced therein and agreed to said line at the time said survey was made.

There is a direct and substantial conflict in the evidence on the question of acquiescence, but there is no conflict as to the employment and payment by both parties of said surveyor for establishing said lines; and since there is a substantial conflict on the main issue, under the well-established rule, both by statute and the decisions of this court, the findings of the court and the jury ought not to be disturbed.

As I view it, the great weight of evidence supports the verdict, and this court has so often held that where there is a substantial conflict in the evidence the verdict of the jury or the findings of the court will not be disturbed, the general rule so long adhered to by this court ought not to be set aside, and that rule is that where there is a substantial conflict in the evidence and there is substantial evidence to support the verdict and findings, such verdict and findings will not be disturbed. (*Miller* v. *Blunck*, 24 Ida. 234, 133 Pac. 383; *Davidson Grocery Co.* v. *Johnston*, 24 Ida. 336, Ann. Cas. 1915C, 1129, 133 Pac. 929; *Montgomery* v. *Gray*,

26 Ida. 583, 585, 144 Pac. 646; *Cameron Lumber Co. v. Stack-Gibbs Lumber Co.,* 26 Ida. 626, 144 Pac. 1114.) We not only have the above and numerous other decisions of the supreme court of this state upon this question, but sec. 4824, Rev. Codes, provides that "whenever there is substantial evidence to support a verdict, the same shall not be set aside." It seems to me that the decision of my associates not only reverses the decisions of this court above cited and other decisions of this court, but it nullifies the provision of the statute above quoted.

The evidence shows that this line was established in the summer of 1910 and agreed to, and that it was also agreed, after the line was established, that appellant should have the crop then standing on said land and that thereafter the respondent should have the crops raised thereon. This agreement was carried out until 1912, when the plaintiff procured an injunction against the defendant restraining him from harvesting the crops then growing on said land. This line had been established by a civil engineer named Young prior to the time Christensen established it, and the line established by Christensen corresponded exactly with the line established by Young.

My associates seem to hold that the rule which should govern in this case is that such acquiescence or agreement between the parties should continue for a term of five years, or during the full period of the statute of limitations. I cannot see that that question has anything to do with this case. These parties employed a surveyor and agreed that they would abide by the line established by him. He established a line, put up stakes along the line, and for two years they did abide by it. It was not contemplated by said agreement that such agreement or acquiescence should continue for a term of five years, and in case one of the parties saw fit to go back on that agreement sometime during the five years then the line should not stand. The question of long acquiescence has nothing to do with the establishment of said boundary line, but it was established by agreement of the parties and in no way involves title by adverse possession.

The majority say in their opinion that "At the expiration of two years and four days from the date of the survey this action was commenced, so that the parties neither acquiesced in nor occupied according to the line established by it for a period of time equal to that fixed by the statute of limitations." That was not necessary. They agreed to employ a surveyor, each paying a part of his compensation. The surveyor established the line under their agreement, and the defendant ought not to be permitted to violate said agreement on the ground that the defendant had not occupied the land under said agreement for the full period of time to establish title by adverse possession.

The defendant had possession of said land for about two years under said agreement, and would anyone contend that if that was their agreement that both parties must acquiesce in it for five years before it would become binding? Title by adverse possession can never be acquired by agreement or acquiescence of the parties. The word "adverse" means that the possessor is holding adversely to the other party and not with his acquiescence and consent.

The record shows that Christensen afterward, at the request of the plaintiff, made another survey, and the second line of survey established the fact that the greater portion of the land in dispute belonged to the defendant.

This court ought not to uphold any litigant in violating the plain provisions of a contract like the one under consideration.

The judgment ought to be affirmed.